

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2007

# USA v. Shedrick

Precedential or Non-Precedential: Precedential

Docket No. 04-2329

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Shedrick" (2007). *2007 Decisions.* Paper 654.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/654

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-2329

———————

UNITED STATES

v.

JAMES SHEDRICK,

                              Appellant

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 02-cr-00523)
District Judge: Honorable Legrome D. Davis

———————

Argued June 1, 2006
Opinion Filed February 28, 2007
Panel Rehearing Granted and Vacated April 26, 2007

Before: AMBRO, FUENTES, and
GREENBERG, Circuit Judges

(Opinion filed: July 19, 2007)

Peter A. Levin, Esquire (Argued)
1927 Hamilton Street
Philadelphia, PA   19103

      Counsel for Appellant

Patrick L. Meehan
  United States Attorney
Robert A. Zauzmer
  Assistant United States Attorney
  Chief of Appeals
Thomas P. Hogan, Jr. (Argued)
  Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA   19106

      Counsel for Appellee

_____

OPINION  OF  THE  COURT
_____

AMBRO, <u>Circuit Judge</u>.

     James Shedrick appeals from the District Court's denial of his 28 U.S.C. § 2255 petition for *habeas corpus* alleging ineffective assistance of counsel on two grounds.   The

Government first contests our jurisdiction, however, because of an appellate and collateral-review waiver contained in Shedrick's signed plea agreement. We conclude that we have jurisdiction over this appeal relating to ineffective-assistance-of-counsel claims; to hold otherwise could work a miscarriage of justice. We next affirm the District Court's denial of Shedrick's claim that his counsel was ineffective for failing to advise him about sentencing matters, but conclude, contrary to the District Court, that ineffectiveness of counsel prevented Shedrick from timely appealing. Therefore, we vacate his sentence and remand this case with directions for the District Court to re-enter it. Shedrick will then be able to file a timely direct appeal, which we will consider in the normal course.

## I.    Factual and Procedural Background

In the early morning of July 11, 2002, Philadelphia Police Officers Keya Mason, Raymond Rutter, and Joy Gallen-Ruiz, along with Sergeant Beverly Pembrook, were on patrol in Philadelphia's 12th District. Officer Mason responded to a 911 emergency call reporting a man with a gun located at 64th Street and Greenway Avenue. Upon arriving at that address, Officer Mason heard gun shots but did not see anyone in the area.

Sergeant Pembrook also responded immediately to the 911 call and, like Officer Mason, did not find anyone at the scene. After a short time, however, Pembrook observed a man—later identified as Shedrick—standing in the middle of the

3

intersection holding a large silver revolver in his right hand. Pembrook made a priority radio call for back-up, stating that the suspect was armed and not in custody.

By that time, Mason had joined Pembrook. Officers Rutter and Gallen-Ruiz, who were riding together, also arrived at the scene. Pembrook and Mason stood in front of a police car and attempted to engage Shedrick while Rutter and Gallen-Ruiz began to approach him from covered positions behind parked cars. The officers repeatedly instructed Shedrick to drop the gun, but he refused. He pointed the gun at the sky and attempted to fire three shots. The gun failed to discharge.

The officers repeated their order for Shedrick to drop his gun. He again aimed the gun upward and pulled the trigger three more times. Yet again the gun failed to fire. Shedrick then opened up the cylinder of the revolver, and empty shell casings fell out of the weapon. When this occurred, the police gang-tackled and disarmed him. Officer Rutter called in a report indicating that Shedrick was in custody.

Immediately after Shedrick was detained, the officers were approached by Li Nguyen and Patricia Edwards. Nguyen and Edwards stated that they had been in a van on their way to work when Shedrick had appeared on the street and started firing shots at their vehicle. One of the bullets struck the front hood of the van. A second bullet penetrated the windshield and traveled directly between Nguyen, who was driving, and

4

Edwards, who was in the front passenger seat. Nguyen and Edwards reported that they went to a police station one block away to report the shooting. When they returned to the spot where the shooting had occurred, they witnessed the police tackling Shedrick.

The police traced the gun in Shedrick's possession, a Smith & Wesson .357 caliber revolver, to an individual named Aki Brickhouse. Brickhouse was charged with, and pled guilty to, transferring the weapon to a convicted felon (Shedrick). He also asserted that Shedrick had been selling crack cocaine on a regular basis from a location in West Philadelphia and had carried the Smith & Wesson while dealing drugs.

Shedrick was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He signed a written agreement with the Government, pleading guilty to that charge and specifically admitting that (1) he possessed the revolver, (2) he had a prior felony record,[1] and (3) the revolver had traveled in interstate commerce. However, Shedrick vigorously contested any involvement in the van shooting (as described by Nguyen and Edwards) and any drug dealing while

_____

[1]Shedrick pled guilty in October 2000 in the Philadelphia Court of Common Pleas to possession with intent to deliver a controlled substance (cocaine) and unlawful possession of an unlicensed firearm.

5

armed with the revolver (as described by Brickhouse).

The plea agreement expressly stated that Shedrick's maximum potential sentence was ten years' imprisonment. It went on to note that the Government was permitted to "make whatever sentencing recommendation as to imprisonment . . . [it] deems appropriate." Indeed, both parties were "free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures."

The agreement also included a provision waiving not only most appeals but also collateral attacks. It stated:

> 10. In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>
> > a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal

6

of his sentence.

b.  If the government does not appeal, then notwithstanding the waiver provision set forth in paragraph 10 above, the defendant may file a direct appeal but may raise only claims that:

    i.   the defendant's sentence exceeds the statutory maximum; or

    ii.  the sentencing judge erroneously departed upward from the otherwise applicable sentencing guideline range.

The District Court conducted a plea hearing in November 2002. During Shedrick's guilty plea colloquy, the Court confirmed and reinforced the terms of the written plea agreement. At the outset of the hearing, the Court stated:

And a plea agreement has been reached and it is recorded in writing and will be filed certainly at the end of this proceeding. But, most importantly, although the plea agreement states all of the

agreements and understandings that exist between the defendant, defense counsel, and the Government, it does not recommend a set term of incarceration as binding upon this Court. Ultimately, the appropriate sentence would be left to the exercise of the Court's discretion based upon information presented by both sides and based upon a review of the Sentencing Guidelines.

Later, the Court reiterated that the sentence would be left to its discretion and that there were no "agreements with anyone about what the right sentence should be." Shedrick confirmed this understanding. He also acknowledged that no other agreements existed between himself and the Government except those contained in the written plea agreement. The Court then made clear to Shedrick that the maximum sentence in his case was ten years' incarceration. Shedrick did express some confusion whether the facts alleged in the plea agreement included an admission that he aimed or shot at police officers, prompting the Court to clarify that he had only agreed to plead to the basic facts of possessing the gun as a convicted felon and that any other issues were left to the parties to argue at sentencing.

After Shedrick entered his plea, the Probation Office prepared a presentence report ("PSR"). It calculated Shedrick's base offense level at 20. It then recommended a four-level enhancement under U.S. Sentencing Guidelines Manual

§ 2K2.1(b)(5) due to Shedrick's prior felony conviction for a controlled substance offense and a three-level deduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. Those adjustments resulted in an offense level of 21 that, combined with a criminal history category of III, yielded a Sentencing Guidelines range of 46 to 57 months.

Two weeks prior to sentencing, the Government filed a memorandum with the District Court arguing that (1) Shedrick was subject to a four-level enhancement for possessing a firearm in connection with another felony offense (specifically, drug dealing), and (2) the Court should depart upward eight levels from the established Guidelines range because Shedrick had discharged the weapon during the commission of his offense (by shooting at a van occupied by two people). Shedrick objected.

The District Court held a sentencing hearing during which the potential enhancement for possession in connection with another felony offense, as well as the upward departure for shooting at the van, were contested. The Government called two witnesses to provide a factual basis to support the enhancement and departure: Brickhouse and Nguyen.

Brickhouse testified that Shedrick had been selling cocaine on a regular basis and that both Shedrick and his half-brother, Tarik Robinson, had carried the Smith & Wesson revolver while dealing drugs.

9

Nguyen testified that he and Patricia Edwards were driving to work in a red van at approximately 5:40 a.m. on the date of Shedrick's arrest, when a black man holding a silver revolver started shooting at them. The Government provided photographs to the District Court showing that bullets struck the left front hood of the van and the mid-windshield, passing between the two passengers. Nguyen recounted going to a police station to report the shooting, returning to where it had occurred, and witnessing the police tackling the man who had shot at the van.[2]

After Brickhouse's and Nguyen's testimony, Shedrick testified to his version of events. He admitted that he had the gun in his possession, but denied ever firing it. He also stated that he did not know Brickhouse and had never seen Nguyen prior to the sentencing hearing.

The Government and defense counsel then engaged in extended arguments about the enhancement and departure. The defense contended that there was insufficient evidence to show that Shedrick either had been dealing drugs or had fired the shots that struck Nguyen's van. Thus, it was the defense's

---

[2]Because Shedrick was wearing a black shirt when arrested, it is notable that Nguyen testified that the shooter had been wearing a white shirt. When confronted by that inconsistency, Nguyen admitted that he had focused on the gun and could have made a mistake about the color of the shooter's shirt.

position that Shedrick should receive a sentence within the standard Guidelines range—46 to 57 months.

The Government, on the other hand, maintained that because the evidence demonstrated that Shedrick had carried the gun while dealing drugs (as testified to by Brickhouse) and that Shedrick shot at the van (as testified to by Nguyen), both the four-level enhancement and eight-level upward departure should apply. It recommended to the Court a sentence of 100 months' incarceration.[3]

At the close of the hearing, the District Court found that Brickhouse and Nguyen were credible witnesses and thus applied the four-level enhancement and eight-level upward departure. Accordingly, the Court sentenced Shedrick to 96 months' incarceration to be followed by three years of supervised release.

The District Court appointed Shedrick new counsel for purposes of appeal on July 31, 2003 (over five months after sentencing), as Shedrick's trial counsel had not filed an appeal. On August 18, 2003 (approximately six months after sentencing), his new counsel filed a motion for enlargement of time to submit a notice of appeal *nunc pro tunc*. The District Court denied the motion on August 27, 2003, and our Court

---

[3]Application of both the four-level enhancement and eight-level departure yielded a Guidelines range of 87 to 108 months.

11

dismissed the appeal as untimely on November 25, 2003. Shedrick (through counsel) proceeded to file a 28 U.S.C. § 2255 *habeas corpus* petition in the District Court, which was denied. He petitioned *pro se* our Court for a certificate of appealability, which was granted for two issues: "whether counsel was ineffective for failing to advise [Shedrick] of a possible upward departure at sentencing; and whether counsel was ineffective for filing an untimely appeal."[4] Before we reach these issues, however, we address the Government's jurisdictional contention.

## II.    Jurisdiction

According to the Government, the appeal and collateral attack waiver contained in Shedrick's written plea agreement strips our jurisdiction. Not so. In *United States v. Khattak*, we joined the courts of appeals for ten other circuits and held that "[w]aivers of appeal, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice." 273 F.3d 557, 563 (3d Cir. 2001). Though *Khattak* went on to say that, if a waiver is valid, "we have no jurisdiction to consider the merits of [an] appeal," *id.*, we recently clarified that statement, *see United States v. Gwinnett*, 483 F. 3d 200, 201–03 (3d Cir. 2007). "[N]otwithstanding the statement in *Khattak*, this [C]ourt retains jurisdiction over the appeal by a defendant who ha[s] signed an

---

[4]We also appointed Shedrick new counsel to pursue this appeal.

appellate waiver." *Id.* at 203. This does not undermine the practical bite of such waivers, however. For as stated in both *Khattak* and *Gwinnett*, "we will not exercise [our] jurisdiction to review the merits of [a defendant's] appeal if we conclude that she knowingly and voluntarily waived her right to appeal unless the result would work a miscarriage of justice." *Id.* at 203; *Khattak*, 273 F.3d 562–63. In short, we have jurisdiction over this case, but will generally not exercise it absent compelling reasons.

At first glance, it does appear that Shedrick waived his right to appeal and collaterally attack his sentence in paragraph 10 of the plea agreement. However, the agreement goes on to state that an appeal is preserved if any of three conditions occurs. They are, to repeat, (1) a Government appeal, (2) a sentence exceeding the statutory maximum, or (3) an erroneous upward departure from the otherwise applicable Sentencing Guidelines range.

It is undisputed that the first two predicates do not apply here; the Government did not appeal, and Shedrick's sentence of 96 months' imprisonment does not exceed the statutory maximum of ten years. Shedrick maintains, however, that the third condition applies. Specifically, he argues that the evidence was not sufficient to support the District Court's conclusion that he discharged his gun, which was the basis of the Court's eight-

13

level upward departure.[5]  He further argues that ineffective assistance of counsel prevented him from timely appealing this allegedly erroneous departure.

The Government, on the other hand, claims that Shedrick "is not arguing that the Court erroneously granted an upward departure, but merely is arguing that counsel was ineffective for allegedly not informing him that the potential for an upward departure existed."  Gov't Br. at 28.  We disagree.  At its essence, Shedrick's argument is that, as a result of counsel's deficient performance, he (1) failed to understand the full effect of his guilty plea as it related to upward departures, and (2) failed timely to appeal the District Court's upward departure, which he was entitled to appeal under the express terms of the plea agreement waiver.  Enforcing a collateral-attack waiver where constitutionally deficient lawyering prevented Shedrick

---

[5]Shedrick's brief mistakenly lumps together his enhancement and his upward departure.  An "enhancement" is an adjustment to the base offense level as specifically provided by the Guidelines, whereas an "upward departure" is a discretionary adjustment to the Guidelines range once calculated.  After *United States v. Booker*, 543 U.S. 220 (2005), the difference is now represented in the distinction between steps one and two as set out in *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).  While Shedrick has a right to appeal the District Court's upward departure under his plea waiver, the literal words of that waiver make clear that he has no concomitant right to appeal the enhancement.

14

from understanding his plea or from filing a direct appeal as permitted by his plea agreement would result in a miscarriage of justice.[6] In this context, we will exercise our jurisdiction to consider Shedrick's ineffective-assistance-of-counsel claims.

---

[6]Our decision in *Khattak* left the miscarriage-of-justice determination open-ended, depending on various factors identified in *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001), *e.g.*, how clear and grave an error existed, the effect of that error on the parties, and the extent to which the defendant acquiesced in the error. *Khattak*, 273 F.3d at 563. We noted, however, that the Seventh Circuit Court of Appeals has specifically held that ineffective assistance of counsel qualifies as a miscarriage of justice sufficient to overcome a waiver-of-appeal provision. *Id.* at 562 (citing *United States v. Joiner*, 183 F.3d 635, 645 (7th Cir. 1999)); *see also United States v. Poindexter*, No. 05-7635, ___ F.3d ___, 2007 WL 1845119, at *2–8 (4th Cir. June 28, 2007); *United States v. Tapp*, No. 05-30222, ___ F.3d ___, 2007 WL 1839277 (5th Cir. June 28, 2007); *Campusano v. United States*, 442 F.3d 770, 773–77(2d Cir. 2006); *Gomez-Diaz v. United States*, 433 F.3d 788, 791–94 (11th Cir. 2005); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1195–99 (9th Cir. 2004); *United States v. Garrett*, 402 F.3d 1262, 1264–67 (10th Cir. 2005); *Teeter*, 257 F.3d at 25 n.9; *United States v. Hernandez*, 242 F.3d 110, 113–14 (2d Cir. 2001); *United States v. Jemison*, 237 F.3d 911, 916 n.8 (7th Cir. 2001).

### III. Merits

#### *A.      Ineffectiveness of Counsel for Failure to Advise*

Shedrick first argues that he received ineffective assistance of counsel during his plea process as a result of counsel's failure to advise him about a potential enhancement or upward departure at sentencing. According to Shedrick, a "fundamental consideration for [him] in determining whether . . . to accept the guilty plea was the length of sentence he could expect to receive."

Under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Shedrick must demonstrate that his attorney's performance was deficient and that he was prejudiced by the deficiency. That is, he must prove that counsel's performance "fell below an objective standard of reasonableness," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Shedrick cannot satisfy these requirements. Indeed, we have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted. *See, e.g.*, *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (counsel not ineffective for allegedly promising defendant a sentence of "no more than 71 months" where defendant was advised in open-

16

court colloquy of potential maximum sentence and there were no other promises regarding sentence); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there was no guarantee as to sentence, and that the court could sentence him to the maximum."); *Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972) (*per curiam*) (holding that "[a]n erroneous prediction of a sentence by defendant's counsel does not render a guilty plea involuntary" where record demonstrates that a proper plea colloquy took place during which defendant acknowledged that he was aware of his maximum potential sentence).  As stated in *Mustafa*,

> [w]e recognize that the maximum sentence authorized by law is often so extraordinarily long that few defendants other than "career criminals" plead guilty with the expectation that the maximum sentence applies to them.  However, all that the law requires is that the defendant be informed of his/her exposure in pleading guilty.  The law does not require that a defendant be given a reasonably accurate "best guess" as to what his/her actual sentence will be; nor could it, given the vagaries and variables of each defendant's circumstances and offending behavior.

17

238 F.3d at 492 n.5.

This case falls well within well-established precedent: defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion. Shedrick's written, signed agreement stated that (1) he faced a maximum potential sentence of ten years' incarceration, (2) the parties were free to argue any other sentencing issues (explicitly including departures), (3) the District Court retained ultimate discretion over the sentence, and (4) there were no other agreements or promises regarding Shedrick's potential sentence.

The District Court repeated these facts in open court, starting the guilty plea colloquy by confirming with Shedrick that

> most importantly, although the plea agreement states all of the agreements and understandings that exist [among] the defendant, defense counsel, and the Government, it does not recommend a set term of incarceration as binding upon this Court. Ultimately, the appropriate sentence would be left to the exercise of the Court's discretion based upon information presented by both sides and based upon a review of the Sentencing Guidelines.

18

It then confirmed that Shedrick (1) had read, signed, and fully understood the plea agreement, (2) understood that there were no other promises regarding his potential sentence, and (3) had admitted the facts of the crime. The Court further advised Shedrick that the maximum potential sentence was ten years' incarceration and repeated that it retained full discretion over the ultimate sentence.

Here, any erroneous sentencing information allegedly provided by defense counsel was corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated Shedrick's potential sentence. Given this record, it is inconceivable that Shedrick did not know he potentially faced a maximum ten-year prison term. In fact, his allegations before our panel are flatly inconsistent with his written, signed plea agreement, as well as his sworn, in-court answers during his plea colloquy. Accordingly, the District Court correctly denied Shedrick's § 2255 motion as to his claim that counsel was ineffective for failing to advise him of the potential for an enhancement or upward departure.[7]

_____

[7]With regard to his failure-to-advise argument, Shedrick relies heavily on one case—*Meyers v. Gillis*, 142 F.3d 664 (3d Cir. 1998)—to advance his claim that bad sentencing information provided by a defense lawyer equals ineffective assistance of counsel. *Meyers* involved a *habeas* proceeding from a state court guilty plea. The defendant had pled guilty to second degree murder, which carried a mandatory life sentence

## B. Ineffectiveness of Counsel for Failure to Appeal Timely

Shedrick's second contention is that his counsel was ineffective for failing to file a timely appeal in this case. In resolving this claim, we are guided by the Supreme Court's

with no chance of parole. Nonetheless, the defendant was misinformed by counsel that he would be eligible for parole in seven years. At his guilty plea, the defendant was repeatedly informed that he would become eligible for parole. Incredibly, that advice was never corrected by the prosecutor or the state trial court. We held that Meyer's counsel was ineffective and reversed his life sentence.

*Meyers* is readily distinguishable from the case before us. The former involved review of a state court proceeding lacking a detailed guilty plea agreement and the equivalent of a Rule 11 guilty plea colloquy. More importantly, the trial court in *Meyers* failed to correct the erroneous sentencing information provided on the record by defense counsel. In sharp contrast, the District Court here corrected any alleged misperception by Shedrick about his potential sentence by accurately informing him that his maximum prison sentence was ten years and that the Court had the discretion to sentence him up to that maximum. *See Scarbrough v. Johnson*, 300 F.3d 302, 303–04, 306 (3d Cir. 2002) (distinguishing *Meyers* and finding no error where defense counsel misinformed defendant that he was eligible for parole but the court repeatedly and correctly informed defendant that his penalty was an "automatic life sentence" with no chance of parole).

decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). There, the Court addressed whether counsel may be found deficient for failing to file a notice of appeal absent specific instruction from the defendant not to do so. Because the question concerned whether counsel's representation was constitutionally defective, the Court held that the two-part *Strickland* test governed its inquiry. *Id*. at 476–77. Applying that standard to the particular facts before it, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. The Court further explained that it "employ[ed] the term 'consult' to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. at 478. Additionally, the Court instructed that courts undertaking this inquiry, as with all ineffective-assistance claims, "take into account all the information counsel knew or should have known." *Id*. at 480 (citing *Strickland*, 466 U.S. at 690).

With respect to *Strickland*'s prejudice prong, the Court held that the harmless-error inquiry applied and that relief could not be granted unless the defendant "demonstrate[s] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have

21

timely appealed." *Id*. at 484. The Court did not identify any determinative factors in this regard, but did stress that "evidence that there were non-frivolous grounds for appeal or that the defendant at issue promptly expressed a desire to appeal will often be highly relevant." *Id.* at 485.

A review of the record here reveals that Shedrick "reasonably demonstrated to [his] counsel that he was interested in appealing" by vehemently contesting the factual issues that led to his upward departure throughout the District Court proceedings. *See* Gov't Br. at 18 (acknowledging that Shedrick "hotly contested" the factual issues leading to his upward departure both prior to and during his sentencing proceedings); *see also* Appellant's App. at 78–79 (demonstrating that Shedrick, during his plea colloquy and prior to pleading guilty, specifically ensured that he was not conceding any involvement in the van shooting incident or any attempt to fire the weapon at police). In this context, Shedrick's counsel had "a constitutionally-imposed duty to consult with" him concerning a possible appeal. *Flores-Ortega*, 528 U.S. at 480; *see id*. at 481 ("We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal.").

The Government argues that Shedrick "makes no allegation that he ever directed counsel to [file an appeal]." Gov't Br. at 58. Indeed, Shedrick's *habeas* counsel wrote in his

22

brief to our Court that "[t]he record does not indicate that [trial] counsel had any discussion with [Shedrick] regarding an appeal. It is also unclear whether [Shedrick] specifically asked [his counsel] to file an appeal." Appellant's Br. at 17. We are uncertain why such comments were made in light of Shedrick's explicit statement in a letter to the District Judge, dated February 26, 2003 (*before* the appeal deadline had passed), that he had asked his counsel to file an appeal on his behalf. Upon receipt of this letter, the Judge's chambers specifically informed counsel for Shedrick of his desire to appeal by leaving a message on counsel's phone. Nevertheless, Shedrick's counsel took no action to effect an appeal.

In sum, the record clearly reflects Shedrick's counsel's deficient representation. There is no indication in the record that he consulted with Shedrick post-sentencing as required by *Roe-Ortega*. In fact, Shedrick expressly wrote to the District Judge that his counsel failed to consult with him during the appeal period. Moreover, even if counsel did so, there is little question he was ineffective in failing to file a timely appeal, as Shedrick had stated that he wished to appeal while that option was available. Under these circumstances, it is not necessary for us to remand this case to the District Court for a factual finding that counsel either did or did not consult with Shedrick; counsel was deficient either way.[8]

---

[8]*Cf. Poindexter*, 2007 WL 1845119, at *8 (remanding for evidentiary hearing on whether the defendant instructed his

23

## C. *Remedy*

Because Shedrick was prevented from filing a timely appeal challenging his upward departure, we must figure out what to do about it. The answer is not obvious, for the law governing federal sentencing has changed significantly since the time Shedrick was sentenced in 2003. We will not recount the details of those changes here, as they have been amply described and extensively examined in other decisions by our Court. *See, e.g.*, *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (*en banc*); *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006); *United States v. Cooper*, 462 F.3d 237 (3d Cir. 2006); *United States v. Davis*, 407 F.3d 162 (3d Cir. 2005) (*en banc*). Suffice it to say that the Guidelines, which were mandatory at the time of Shedrick's sentencing, are now only "effectively advisory." *Booker*, 543 U.S. at 245. This change in the law has required us to deal with several problems for cases in which sentences were imposed before *Booker* but were on appeal when that decision came down.

Generally, we have adopted a broad remand policy for cases on direct appeal from sentences imposed under the mandatory Guidelines. *See Davis*, 407 F.3d at 164–66. But that

---

attorney to file a notice of appeal); *Tapp*, 2007 WL 1839277 (same); *Campusano*, 442 F.3d at 777 (same); *Gomez-Diaz*, 433 F.3d at 794 (same); *Sandoval-Lopez*, 409 F.3d at 1198–99 (same); *Garrett*, 402 F.3d at 1267 (same).

24

policy is not necessarily applicable when it comes to cases involving appellate waivers. Most relevant here, we held in *United States v. Lockett*, 406 F.3d 207, 213–14 (3d Cir. 2005), that *Booker* neither entitles a defendant to withdraw his guilty plea nor to an unfettered right to re-sentencing under an advisory scheme if he has waived his right to appellate review as part of his plea bargain. "[W]here subsequent developments in the law expand a right that a defendant has waived in a plea agreement, that change does not make the plea involuntary or unknowing or otherwise undo its binding nature." *Id.* at 213.[9]

*Lockett*'s relevance to this case is somewhat unclear, though. There, the defendant had "ask[ed] us to invalidate his sentence because he did not know at the time he pleaded guilty that the Supreme Court would later hold that the Sentencing Guidelines are advisory." *Id.* Here, in contrast, the record demonstrates that Shedrick's concern at the time of his sentence was the propriety of his eight-level upward departure, as explained in the previous section. That argument is specifically permissible under the terms of Shedrick's plea agreement and is not affected by *Lockett*.

But despite its presence in all of the ineffective-

---

[9]This is all the more true in *habeas* proceedings raising *Booker*-related claims, as we have held that *Booker*'s effect is not retroactive on *habeas* review. *See Lloyd v. United States*, 407 F.3d 608 (3d Cir. 2005).

assistance-of-counsel discussion, Shedrick oddly does not make an argument with respect to whether his upward departure was proper. Instead, the only argument raised in his brief before us with regard to the merits of the departure is that the District Court (rather than a jury) found facts using a preponderance-of-the-evidence (rather than beyond-a-reasonable-doubt) standard, thus causing him to be sentenced higher than the statutory maximum as construed in *Blakely v. Washington*, 542 U.S. 296, 303–04 (2004) ("[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings."). This *Blakely*-based contention is a Sixth Amendment argument that was waived as part of Shedrick's plea agreement and, under *Lockett*, is a nonstarter.

The above discussion aside, we consider it the better part of prudence not to address the substance of Shedrick's underlying sentence. Instead we will follow the usual course in cases of this nature: vacate and remand for re-entry of the initial sentence so that there can be a timely appeal. *See United States v. Hadden*, 475 F.3d 652, 661 n.8 (4th Cir. 2007) (citing *United States v. Torres-Otero*, 232 F.3d 24, 30–31 (1st Cir. 2000); *United States v. Prado*, 204 F.3d 843, 845 (8th Cir. 2000); *In re Goddard*, 170 F.3d 435, 436 (4th Cir. 1999); *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993)); *see also Spence v. United States*, 68 Fed. Appx. 669, 676 (6th Cir. 2003); *Garcia v. United States*, 278 F.3d 134, 138 (2d Cir. 2003). This will put Shedrick in the same position he would have been in if he had

26

had effective assistance of counsel. Moreover, it will give him the opportunity properly to raise the issue that he had previously expressed a desire for this Court to review and which he explicitly preserved in his plea agreement and colloquy: the propriety of his upward departure.

## IV.    Conclusion

For the reasons explained above, we have jurisdiction over this appeal involving ineffective-assistance-of-counsel claims. We proceed to affirm the District Court's denial of Shedrick's § 2255 petition concerning the claim that his counsel was ineffective for failing to advise him as to the potential for an enhancement or upward departure. However, Shedrick has demonstrated that his counsel was ineffective under *Roe-Ortega* for failing to assist him in his right to appeal. We thus reverse the Court's denial of Shedrick's § 2255 petition on this claim. In so doing, we vacate Shedrick's sentence and remand to the District Court with instructions to re-enter it, thus giving him the opportunity timely to appeal on the narrow ground allowed by his plea agreement.