NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1254
_____

UNITED STATES OF AMERICA

v.

MICHAEL DELBRIDGE,
                                              Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-05-cr-00135-001)
District Judge:  Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit LAR 34.1(a)
October 23, 2012

Before:  HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Filed: November 15, 2012)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Michael Delbridge was sentenced to a term of 188 months' incarceration and five years of supervised release after pleading guilty to possession with intent to distribute 5 grams or more of cocaine base.  At issue in this appeal is the District Court's order

denying Delbridge's motion to vacate sentence under 28 U.S.C. § 2255. We will affirm.

I

A grand jury in the Western District of Pennsylvania charged Delbridge with two counts of possession with intent to distribute 5 grams or more of cocaine base (Count I and Count III) and one count of possession with intent to distribute less than 5 grams of cocaine base (Count II). Following the indictment, Delbridge entered into a written plea agreement with the Government. He pleaded guilty to Count III and waived his rights to take a direct appeal, except in a few limited circumstances, or file a collateral proceeding attacking his sentence. In return, the Government moved to dismiss Counts I and II.

The District Court conducted a thorough plea colloquy, during which it explained the maximum sentence that Delbridge could receive under the applicable statute and the Guidelines range that likely applied based on a preliminary presentence report.[1] The District Court also explained that it was not bound by the advisory Guidelines range in determining Delbridge's sentence. Delbridge affirmed that he understood, and confirmed under oath that no one had promised him a specific sentence, nor had anyone predicted what his actual sentence would be.

The District Court then reviewed the terms of the plea agreement with Delbridge

---

[1] At the change of plea hearing, the prosecutor and Delbridge's counsel agreed that the applicable advisory Guidelines range was 188–235 months, based on Delbridge's offense level of 31 and criminal history category of VI. Delbridge's offense level was based, in part, on the determination that he was a career offender.

2

and addressed the fact that Delbridge was giving up his right to collaterally attack the judgment of sentence:

> [Q:] You are also giving up your right, any right you may have to file a motion to vacate sentence under Title 28, United States Code, Section 2255, for habeas corpus release [sic], and you're also giving up other valuable rights to obtain collateral review of your sentence. Do you understand, sir?
>
> [A:] Yes, sir.

The District Court sentenced Delbridge as a career offender under United States Sentencing Guideline (USSG) § 4B1.1. The PSR showed that Delbridge had twice been convicted of distribution of a controlled substance, once in 1992 and once in 1994, and Delbridge had stipulated to being a career offender in his plea agreement. The District Court sentenced Delbridge to a term of 188 months' incarceration and five years of supervised release, a sentence at the bottom of the advisory Guidelines range.

Despite having waived his right to appellate review, Delbridge filed a direct appeal on February 26, 2008. The Government filed a motion to enforce the appellate waiver, and we granted that motion. Undeterred by either our decision dismissing his appeal or by his express waiver of his right to collaterally attack the sentence, Delbridge filed a motion to vacate his judgment of sentence under 28 U.S.C. § 2255 on November 29, 2010. Delbridge raised four claims in his motion:

(1)     He was denied effective assistance of counsel because of his counsel's erroneous advice concerning his offense level and his counsel's failure to investigate;

(2)     He was denied effective assistance of counsel because his attorney

3

failed to consult with him concerning a suppression hearing, and failed to follow through with that hearing;

(3)     He was denied effective assistance of counsel because his attorney failed to investigate whether his prior convictions actually qualified him for sentencing as a career offender; and

(4)     He was denied effective assistance of counsel at sentencing because his attorney did not litigate his career offender status.

The District Court summarily denied the motion, explaining that Delbridge "knowingly, voluntarily, and with full understanding of the consequences waived his right to file any collateral challenge to his conviction or judgment of sentence, and he fails to even allege, [much] less point to facts or circumstances in support, that enforcement of the waiver in his case would work a miscarriage of justice."

On July 19, 2011, we granted a certificate of appealability on three issues: (1) whether the District Court erred in enforcing the waiver provision *sua sponte*; (2) whether the District Court erred in enforcing the waiver provision without providing Delbridge with notice and opportunity to respond; and (3) whether the District Court erred in concluding that the waiver provision barred all of Delbridge's claims.

II

The District Court had jurisdiction to hear Delbridge's claims under 28 U.S.C. § 2255. We have jurisdiction to decide this appeal pursuant to 28 U.S.C. §§ 1291 and 2253. Because the District Court decided Delbridge's motion as a matter of law and without a hearing, we review its decision de novo. *See United States v. Eakman*, 378

4

F.3d 294, 297 (3d Cir. 2004).

## III

The District Court dismissed Delbridge's motion to vacate *sua sponte*, finding that he had waived his right to collaterally attack the judgment of sentence. A district court has the authority to dismiss a motion to vacate without ordering a response from the Government or holding an evidentiary hearing when it is clear from both the motion and the record that the movant is not entitled to relief. *See* 28 U.S.C. § 2255(b); Rule 4(b) of the Rules Governing § 2255 Proceedings. Courts may raise and consider at least some affirmative defenses to the prisoner's claims without waiting for the Government to raise those defenses itself. *See, e.g.*, *United States v. Bendolph*, 409 F.3d 155, 165 & n.15 (3d Cir. 2005) (statute of limitations). Here, both Delbridge and the Government assume that the District Court had the power to raise the issue of Delbridge's collateral proceedings waiver without the Government first having asserted the waiver as an affirmative defense.

As a matter of prudence, the District Court might have requested briefing from Delbridge on the waiver issue. Because Delbridge's waiver of his right to collateral proceedings is an affirmative defense that can be raised—or waived—by the Government, Delbridge was not required to include arguments in his motion to vacate regarding the applicability of the waiver.[2] Based on only the record and the motion to vacate, it was

---

[2] In *United States v. Goodson*, we explained that "a defendant is not obliged in his opening brief to acknowledge the existence of an appellate waiver and/or to explain why the waiver does not preclude appellate review of the substantive issue raised. Rather, it is

theoretically possible that Delbridge had valid arguments regarding the waiver that could not be discerned from the record. *See United States v. Mabry*, 536 F.3d 231, 238 & n.7 (3d Cir. 2008) (suggesting that a defendant's claim that he was actually misled may sometimes involve facts outside the record and require an evidentiary hearing); *Bendolph*, 409 F.3d at 165 n.15 (explaining that movants should be given an opportunity to respond when the court raises a statute of limitations defense because some relevant facts might not be apparent from the record and the petition alone).

We need not dwell on this procedural issue, however, as we have determined—based both on a review of the record in the District Court and on the arguments that Delbridge now asserts in his appellate briefing—that the waiver does bar Delbridge's claims in this case. In assessing the validity of a waiver, courts must consider whether the waiver was entered into knowingly and voluntarily, and whether its enforcement would work a miscarriage of justice. *Mabry*, 536 F.3d at 237. Although Delbridge argues in his appellate briefing that he did not enter into the plea agreement knowingly and voluntarily, and that enforcement would work a miscarriage of justice, none of his specific claims require additional factfinding, and the record demonstrates that his claims lack merit.

only after the government has invoked an appellate waiver as a bar to our review that a defendant must raise a challenge to the waiver's enforceability." 544 F.3d 529, 536 (3d Cir. 2008). Although *Goodson* involved a direct appeal, not a § 2255 motion, the same reasoning applies here. Prisoners are not required to respond to all potential affirmative defenses that the Government may raise in its responsive briefing. *See Bendolph*, 409 F.3d at 165 n.15 (3d Cir. 2005); *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002); *Acosta v. Artuz*, 221 F.3d 117, 125 (2d Cir. 2000).

A

Delbridge contends that his plea colloquy was facially insufficient because the District Court's description of the waiver was not sufficiently detailed. He compares the explanation of his waiver with the explanation provided in the plea colloquy in *United States v. Mabry*. There, the prosecutor and the defense attorney described to Mabry, on the record, the nature of a collateral proceeding. 536 F.3d at 234. Mabry was told by his attorney that the right to collaterally attack a sentence is "a right after direct appeal for you, for instance, to raise issues that may have to do with my ineffectiveness or other collateral issues that could not have been raised on appeal." *Id*. Delbridge argues that the District Court should have defined "collateral proceedings" and explained specifically that Delbridge would be waiving his right to challenge the effectiveness of his counsel.

The transcript of the plea colloquy shows that Delbridge waived his right to collaterally attack his sentence knowingly and voluntarily. Although the District Court may not have described "collateral review" in the same depth as the defense counsel in *Mabry*, it was not required to do so. Delbridge's plea colloquy was conducted in accordance with Rule 11(b)(1) of the Federal Rules of Criminal Procedure. He was advised of the rights that he was waiving; the District Court stated that he was waiving his right to file a motion to vacate his sentence "and other valuable rights to obtain collateral review of your sentence," and Delbridge confirmed under oath that he understood what the Court was telling him. The District Court was not required to define

7

further or characterize "collateral proceedings," nor was it required to list the types of claims that Delbridge would no longer be permitted to bring as a result of that waiver. *See, e.g., Mabry*, 536 F.3d at 239 (holding that the sentencing court was not required to specifically define "miscarriage of justice" or "advise a defendant of its practical applications").

## B

Delbridge also argues that he was actually misled about the consequences of his waiver, and that he is entitled to an evidentiary hearing to establish that claim. Delbridge contends that "he was told by pre-plea counsel that he would be sentenced at an offense level 26 if he pled guilty," a claim that "goes to what Delbridge actually understood, based on what he purports his pre-plea counsel told him during their private, attorney-client communications, communications not a part of the record before the District Court."

The plea colloquy transcript also belies this argument. Even if statements made by Delbridge's counsel led Delbridge to believe, at some point, that he was going to be sentenced at an offense level of 26, multiple statements made to him during the plea colloquy should have dispelled such a belief. At the plea colloquy, Delbridge was advised of the maximum sentence that he could receive, he was informed of the Guidelines range applicable to his case, and he was cautioned that the District Court was not bound by the Guidelines in determining his sentence. Delbridge acknowledged that

8

he understood, and confirmed that no promises had been made to him about his actual sentence. These explanations render any allegedly inaccurate comment made by Delbridge's counsel irrelevant. *See United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) ("[D]efense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion."); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that Mustafa's former counsel may have made regarding sentencing calculations were dispelled when Mustafa was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").

## C

Finally, Delbridge argues that we should decline to enforce his collateral proceedings waiver because barring his claims would work a miscarriage of justice. In considering whether enforcing a waiver would result in a miscarriage of justice, we take into account "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *Mabry*, 536 F.3d at 242–43 (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)). We apply the miscarriage of justice exception "sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d

455, 458 (3d Cir. 2005) (quoting *Teeter*, 257 F.3d at 26). The miscarriage of justice exception does not apply here because the record establishes that none of Delbridge's substantive claims have merit.

1

Delbridge asserts two claims related to his status as a career offender: (1) counsel should have investigated whether his prior convictions actually qualified him for sentencing as a career offender; and (2) counsel should have challenged this status at his sentencing hearing. Delbridge argues that he did not have counsel when he was convicted of distribution of a controlled substance in 1993, and so that conviction should not have been used in sentencing him as a career offender. He argues that if his counsel had adequately investigated his criminal history, he would have discovered that his 1993 conviction was invalid, and he could have objected to its inclusion in the PSR.

To establish that he was denied ineffective assistance, Delbridge must show that his attorney's performance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Although a conviction obtained in violation of the right to appointed counsel should not count as a predicate conviction,[3] Delbridge cannot establish that his

---

[3] *See Burgett v. Texas*, 389 U.S. 109, 115 (1967) ("To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case." (citation

attorney's failure to investigate or litigate that issue prejudiced him in any way because he cannot show that he was denied representation in either of his prior distribution convictions. Both of the sentencing orders from Delbridge's Alabama convictions for unlawful distribution note that Delbridge appeared "with his attorney." Although it is unclear which of these convictions Delbridge contests—since neither of the orders is from 1993—it is sufficiently clear that he had counsel in both of the cases that were noted in the PSR.[4] Thus, enforcing Delbridge's waiver with respect to these claims does not result in a miscarriage of justice.

2

Delbridge also claims that he was denied effective assistance because his pre-plea counsel told him that he would be sentenced at an offense level of 26 if he pleaded guilty. However, "we have long held that an erroneous sentencing prediction by counsel is not

---

omitted)); *see also Curtis v. United States*, 511 U.S. 485, 496 (1994) (noting the holding in *Burgett* but declining to extend it to, *inter alia*, denial of effective assistance of counsel, explaining that "failure to appoint counsel for an indigent defendant [is] a unique constitutional defect").

[4] Delbridge does not challenge the accuracy of any of the Alabama sentencing orders provided in the Government's appendix. He argues instead: "This Court directed the parties to address Delbridge's 1993 conviction. From the government's Supplemental Appendix, it would appear that Delbridge had an attorney for all three of his Alabama convictions. Of those three convictions, none actually occurred in 1993." Since the only mention of a 1993 conviction was in Delbridge's motion to vacate—not in the PSR that the District Court relied on—it is the 1992 and 1994 distribution convictions that are relevant here. (The third conviction referenced by Delbridge, from 1996, was a conviction for possession, not distribution, and so was not a part of the Court's career offender determination.)

ineffective assistance of counsel where, as here, an adequate plea hearing was conducted." *See Shedrick*, 493 F.3d at 299; *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003). Because the District Court explained at the plea colloquy both Delbridge's maximum potential sentence and the Court's discretion in sentencing, and Delbridge confirmed under oath that there were no other agreements or promises regarding his potential sentence, enforcing Delbridge's plea waiver with respect to this claim could not result in a miscarriage of justice. *See Shedrick*, 493 F.3d at 299.

3

Delbridge asserted in his motion to vacate that he was denied effective assistance of counsel because his pre-trial counsel failed to consult with him on a suppression hearing. As the Government points out, however, Delbridge does not even attempt to explain in his appellate briefing why barring this claim would result in a miscarriage of justice. Because Delbridge entered into the plea agreement knowingly and voluntarily, and because he has not suggested that enforcing this claim would result in a miscarriage of justice, this claim is also barred.

III

For the foregoing reasons, we will affirm the District Court's order denying Delbridge's § 2255 motion to vacate.