NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3144
_____

UNITED STATES OF AMERICA

v.

TUYEN QUANG PHAM,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. 5-08-cr-00427-004)
District Judge:  Honorable Legrome D. Davis
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 8, 2014

Before:  FISHER, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed: October 1, 2014)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Tuyen Quang Pham appeals the District Court's order denying his motion under

28 U.S.C. § 2255 without holding an evidentiary hearing.  The District Court granted a

certificate of appealability on two issues:  (1) whether Pham's counsel was ineffective in

advising him to plead guilty to violating 21 U.S.C. § 860, and (2) whether, if Pham's

counsel provided ineffective assistance, the collateral relief waiver in Pham's plea agreement is enforceable as to that claim.[1] For the reasons stated below, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts that are necessary to our analysis.

In March 2008, agents from the Drug Enforcement Administration executed search warrants at four properties in Reading, Pennsylvania. The searches confirmed what a prior investigation had led the DEA to believe—three of the properties operated as large-scale marijuana grow houses, and one showed signs that it formerly operated as a grow house. Pham co-owned one of the active grow houses, located at 1307 Lorraine Road, and DEA agents regularly observed Pham at this house during the course of their investigation.

The 1307 Lorraine Road property is located within 1,000 feet of an athletic field named Hampden Park (or "the Park"). Hampden Park borders Reading Senior High School, and the Reading School District operates the Park. Fences and signs surround Hampden Park, clearly identifying it as belonging to and subject to the control of the School District. The School District and the City of Reading co-own the parcel of land

---

[1] This Court granted a certificate of appealability on the same issues in a related case, *United States v. Bui*, No.11-3795 (3d Cir. May 9, 2012), which is still pending.

comprising Hampden Park, and the Park's land and the parcel of land comprising Reading Senior High School are described in different deeds.

In July 2008, twelve individuals, including Pham, were charged with conspiracy to manufacture marijuana and related offenses. Pham faced four counts: (1) conspiracy to manufacture more than 1,000 marijuana plants, in violation of 21 U.S.C. §§ 841, 846 (Count One); (2) manufacturing more than 100 marijuana plants, in violation of 21 U.S.C. § 841(a)(1) (Count Two); (3) maintaining a place for the purpose of manufacturing and distributing marijuana plants, in violation of 21 U.S.C. § 856(a)(1) (Count Three); and (4) manufacturing marijuana plants and maintaining a place for the purpose of manufacturing and distributing marijuana plants within 1,000 feet of a school, in violation of 21 U.S.C. § 860 (Count Four).

On May 14, 2009, Pham pled guilty to Counts One and Four pursuant to a written plea agreement. The plea agreement advised Pham that Counts One and Four each carried a mandatory minimum sentence of ten years' imprisonment as well as a statutory maximum sentence of life imprisonment. The plea agreement further stated that no other promises outside the agreement had been made to Pham. It also included a waiver of appeal provision under which Pham waived any right to appeal his conviction or sentence either on direct appeal or collateral attack.

The District Court held a change of plea hearing and took great care to ensure that Pham understood the nature of the proceedings. Among other things, Pham told the

3

District Court that no one had promised him anything outside the terms of the plea agreement, and that he understood that no one could guarantee the sentence he would receive. The District Court asked Pham whether he understood that he faced mandatory minimum sentences of ten years' imprisonment for both Counts One and Four as well as a statutory maximum penalty of life imprisonment, and Pham told the District Court that he understood. Furthermore, Pham told the District Court that he understood that the plea agreement was binding even if the District Court rejected recommendations from counsel or denied motions related to sentencing. At the conclusion of the plea hearing, the District Court accepted the guilty plea.

Before sentencing, Pham's counsel filed a motion for relief from the mandatory minimum sentences at issue pursuant to the "safety valve" provision of 18 U.S.C. § 3553(f). Pham's counsel withdrew the motion at the sentencing hearing, however, because he acknowledged that Third Circuit precedent held that the safety valve exception did not apply to convictions under § 860. Pham told the District Court that he spoke to his counsel about the motion, that he understood why his counsel withdrew the motion, and that he agreed with the request to withdraw the motion. Due to the mandatory minimum sentences at issue, the District Court sentenced Pham to 120 months' imprisonment on both Count One and Count Four to be served concurrently, ten years' supervised release, a $3,000 fine, and a $200 special assessment.

On October 14, 2010, Pham filed a motion to reduce his sentence, in which he asserted an ineffective assistance of counsel claim. The District Court construed the motion as a notice of appeal, but this Court directed the District Court to construe Pham's motion as a motion under 28 U.S.C. § 2255.

Pham filed an amended § 2255 motion, again claiming he received ineffective assistance. The District Court denied Pham's § 2255 motion for two reasons. The District Court first concluded that the waiver of collateral relief provision barred Pham's collateral attack. But even if the waiver did not bar consideration of the merits of Pham's motion, the District Court also decided that Pham failed to show that he received ineffective assistance of counsel. Pham filed this timely appeal.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 2255. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. "'In a federal habeas corpus proceeding, we exercise plenary review of the district court's legal conclusions and apply a clearly erroneous standard to the court's factual findings.'" *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (quoting *Lambert v. Blackwell*, 134 F.3d 506, 512 (3d Cir. 1997)). We review the denial of an evidentiary hearing for abuse of discretion. *Id.* A district court must hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005) (internal quotation marks and citation omitted).

III.

The only question we must answer is whether Pham's allegations are sufficient to show that his counsel provided ineffective assistance when he advised Pham to plead guilty to violating 21 U.S.C. § 860.[2] To establish a claim of ineffective assistance of counsel, a criminal defendant must show (1) that his counsel's performance was deficient, and (2) that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984).

To show deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" as defined by "prevailing professional norms." *Id.* at 688. Our inquiry "must be highly deferential" to counsel's performance; we must disregard "the distorting effects of hindsight" and instead assess the reasonableness of counsel's performance from "counsel's perspective at the time." *Id.* at 689. We therefore "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

To satisfy *Strickland*'s prejudice prong, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a

---

[2] On appeal, the Government does not argue that Pham's motion is barred by the plea agreement's collateral relief waiver. The government concedes that the waiver should not be enforced if Pham should have been granted relief from the plea agreement because he received ineffective assistance. Because we conclude that Pham's ineffective assistance of counsel claim fails, we need not address the waiver issue.

probability sufficient to undermine confidence in the outcome." *Id*. In the guilty plea context, the prejudice requirement is satisfied if a defendant shows a reasonable probability that he would have proceeded to trial instead of pleading guilty but for his counsel's deficient performance. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Such a showing requires "more than a bare allegation" that the defendant would have gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995), *superseded by statute on other grounds as recognized in Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996). Rather, a defendant must show that a decision to proceed to trial "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

On appeal, Pham identifies two instances of allegedly deficient performance: first, when his counsel failed to advise him that he could mount a defense to Count Four by arguing that Hampden Park is not a school covered by § 860, and second, when his counsel erroneously advised him that he would be eligible for the safety valve exception under § 3553(f) at sentencing. Pham also argues that but for these errors, he would have proceeded to trial. As discussed below, neither of these arguments is persuasive.

A.

Pham first contends that his counsel rendered deficient performance by failing to challenge the factual basis for the charge under § 860. Section 860 makes it a criminal offense for persons who, inter alia, manufacture drugs "in or on, or within one thousand

7

feet of, the real property comprising a public or private elementary, vocational, or secondary school."

According to Pham, his counsel should not have advised him to plead guilty and should have instead advised him that he had a viable defense by arguing that Hampden Park is not a school within the ambit of § 860. Pham's argument proceeds in two steps. Pham argues that his counsel should have advocated for a narrow construction of § 860 that prohibits drug activity within 1,000 feet of schools, not athletic fields. Pham also contends that his counsel should have argued that Hampden Park is not a school by emphasizing that Hampden Park is co-owned by the School District and the City and that the Park's parcel of land is covered by a different deed than the School's parcel.

Pham's argument misses the mark for several reasons. First, we are not persuaded by Pham's narrow interpretation of § 860. Although § 860 does not define school, we must give the text its ordinary meaning. *See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). Real property ordinarily refers to the land and any buildings on the land, not only the land directly underneath the buildings. *See* Black's Law Dictionary 1337 (9th ed. 2009). Moreover, we agree with the Government that a school ordinarily refers to more than the physical schoolhouse. A school also often includes areas for recreational activities and gathering, such as athletic fields, assembly areas, and parking

lots. Thus, we conclude that § 860 may extend to areas outside school buildings, including athletic fields.[3]

Nor is there any textual basis for restricting a school's real property to property that is listed in a single deed or property that is owned only by the school. Section 860 is focused on a school's real property, and as the Government argues, a school's real property may include plots listed in different deeds because a school may acquire property at different times or put property to different uses as time passes. Finally, Pham's narrow construction of § 860 conflicts with Congress' broad mission in creating drug-free school zones. *See United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992) ("Congress was more broadly concerned about serious drug crimes that occur in proximity to schools.").

Here, Pham concedes that the Reading School District owns and operates the property that includes Reading Senior High School, and that the School District co-owns and operates the adjacent property that includes Hampden Park. The record is bereft of specific allegations that Hampden Park is used for non-school purposes. In fact, the record shows just the opposite: the School District controls usage of Hampden Park

---

[3] Our conclusion is consistent with how other courts of appeals have approached § 860's 1,000-feet requirement. These courts have held the government to its burden of proof of showing that the distance between the drug activity's location and the school's property line, not the building line, is within 1,000 feet. *See United States v. Watson*, 887 F.2d 980, 981 (9th Cir. 1989) (interpreting precursor to § 860); *United States v. Johnson*, 46 F.3d 1166, 1170 (D.C. Cir. 1995) (reversing § 860 conviction because the government failed to provide sufficient evidence of distance such as the evidence used in *Watson*, 887 F.2d at 981).

through fences and signs, and the Park comprises playing fields of the kind normally found at a high school. We therefore conclude that Pham has not alleged sufficient facts to show that this defense was viable. Accordingly, Pham has failed to make a showing of deficient performance. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

But even if Pham's argument was marginally more persuasive, we cannot say his counsel's performance was deficient. *Strickland* does not demand perfection, only reasonableness. *See Harrington v. Richter*, 131 S. Ct. 770, 791 (2011). Moreover, we must remember that "[t]here are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. Pham's counsel did not act unreasonably when he failed to develop a novel argument that lacked any support in legal authority and instead advised his client to plead guilty in the face of strong evidence of guilt.

Similarly, because we conclude that the defense likely would have failed at trial, Pham cannot show he was prejudiced by his counsel's alleged error. *See Hill*, 474 U.S. at 59 ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 485-86 (2000) (recognizing that the performance and prejudice inquiries may overlap in some cases).

10

Nor has Pham shown that it would have been rational for him to reject the plea bargain given the strong case against him and the lack of any other defenses.

Accordingly, we conclude that Pham's first ineffective assistance of counsel claim was properly denied because his allegations are insufficient to show deficient performance and prejudice.

B.

Pham's second ineffective assistance claim also lacks merit. Pham argues that his counsel was ineffective for advising him that he would be eligible for § 3553's safety valve exception when this Court has held that the exception is unavailable for convictions under § 860. *See United States v. McQuilkin*, 78 F.3d 105, 109 (3d Cir. 1996).

Even assuming the truth of Pham's allegations, Pham cannot establish that he was prejudiced by his counsel's error. "[W]e have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted." *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). The written plea agreement stated that Pham faced a mandatory minimum penalty of ten years' imprisonment and a maximum penalty of life imprisonment for each count to which he pled guilty and that no one had made any promises to him to get him to enter a guilty plea. Moreover, the District Court conducted an extensive and thorough plea colloquy reiterating Pham's sentencing exposure and ensuring that Pham was not pleading guilty because anyone had made any promises outside the agreement. The

11

District Court also explained that it could disregard recommendations by counsel at sentencing, but Pham would still be bound by his guilty plea. Pham told the District Court that he understood all this information. Accordingly, any misperceptions Pham had about his sentence when he decided to plead guilty should have been eliminated by the written plea agreement and the plea colloquy. Thus, the District Court properly denied Pham's claim because he failed to show that, but for his counsel's erroneous prediction about the safety valve provision, he would have pled not guilty and proceeded to trial.

## IV.

Even accepting Pham's allegations as true, the record establishes that Pham was not entitled to relief, so the District Court did not abuse its discretion by not holding an evidentiary hearing. Accordingly, for the reasons set forth above, we will affirm the order of the District Court.