

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-28-2008

# USA v. Mabry

Precedential or Non-Precedential: Precedential

Docket No. 06-2867

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Mabry" (2008). *2008 Decisions.* Paper 747.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/747

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2867
_____

UNITED STATES OF AMERICA

v.

JAMES MABRY
a/k/a James Young
a/k/a Manny

JAMES MABRY,
                              Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 04-cr-00120)
District Judge:  Honorable Malcolm Muir

_____

Argued March 27, 2008

Before:  McKEE, RENDELL and
TASHIMA,* <u>Circuit</u> <u>Judges</u>.

(Filed July 28, 2008)

_____

David R. Fine, Esq.
Andrew L. Swope, Esq.    **[ARGUED]**
Kirkpatrick & Lockhart Preston Gates Ellis
17 North Second Street, 18th Floor
Harrisburg, PA  17101
    *Counsel for Appellant*

John J. McCann, Esq.
Office of United States Attorney
240 West Third Street, Suite 316
Williamsport, PA  17701

Theodore B. Smith, III, Esq.    **[ARGUED]**
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA  17108
    *Counsel for Appellee*

_____

    *  Honorable A. Wallace Tashima, Senior Judge of the
    United States Court of  Appeals for the Ninth Circuit,
    sitting by designation.

2

OPINION OF THE COURT

RENDELL, *Circuit Judge*.

James Mabry appeals from the District Court's denial of his habeas petition in which he claimed that his counsel was ineffective for failing to file an appeal. The District Court held that Mabry's claim was barred by the waiver in his plea agreement of his right to file a collateral attack. While the issue before us–which, we believe, involves the enforceability of the waiver–may seem straightforward, there is a body of caselaw in the courts of appeals–which, curiously, focuses not on the waiver but on the importance of the right to appeal–that complicates our analysis. Ultimately, we will affirm.

## I. Facts and Procedural History

On March 25, 2004, a federal grand jury issued a four-count indictment against James Mabry. On November 18, 2004, a six-count superceding indictment was returned charging Mabry with possession with intent to distribute cocaine and crack, possession of a firearm during and in relation to a drug trafficking crime, and felon in possession of a firearm on several dates in March 2004. After a jury was selected for trial on May 3, 2005, Mabry entered into a written plea agreement pursuant to which he pleaded guilty to one count of the indictment, possession with intent to distribute more than five grams of cocaine base, in return for the government's dismissal of the

3

remaining charges.

The plea agreement specifically provided that Mabry waived any right "to appeal any conviction and sentence, including a sentence imposed within the mandatory minimum, on any and all grounds set forth in title 18 United States Code, Section 3742 or any other grounds, constitutional or nonconstitutional." Plea Agreement ¶35. He also waived his "right to challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255." *Id*. Mabry signed underneath an acknowledgment, which stated "I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it." (J.A. 66).

In the course of a thorough change-of-plea colloquy, government counsel read relevant parts of the plea agreement, including the entire waiver provision, to the defendant. The Court then asked Mabry if he understood the plea agreement and received an affirmative answer. It confirmed that no promises or threats had been made to induce him to plead and that he had not been threatened with additional charges or other government action if he failed to plead. It verified that Mabry had discussed the terms of the Sentencing Guidelines with defense counsel and understood that the Court was not bound by the calculation of the Guidelines.

The Court discussed the waiver of direct appeal and collateral challenge rights at some length. It first referred Mabry

4

to the appellate waiver in the plea agreement and asked whether he understood the meaning and effect of the waiver. It explained that "unless there is an error that results in a miscarriage of justice, you will have no right to challenge or appeal an incorrect or allegedly incorrect determination of the advisory sentencing guidelines imprisonment range made by this Court" and inquired as to whether the defendant understood. (J.A. 198). The defendant answered both questions affirmatively.

The Court then turned to the waiver of the right to collaterally attack the sentence. Directing the defendant to that section of the plea agreement, the Court asked:

> Do you understand that although you will be sentenced after a very careful consideration of the advisory sentencing guidelines, unless there is an error which results in a miscarriage of justice, you will have no right to challenge in any appeal or collateral proceeding an incorrect or allegedly incorrect determination of the advisory sentencing guidelines? Do you understand that?

(J.A. 198). Once again, the defendant responded affirmatively. The prosecutor was asked to advise Mabry of the meaning of a collateral proceeding.

5

Defense counsel then explained the meaning of the appellate and collateral waivers in more depth:

> What the waiver of appeal, as his Honor just covered, is once the sentence is imposed you have given up your right to challenge the calculation which is advisory only of the sentencing guidelines. In addition to direct appeal rights, based on the frankly long standing rights going back to the Magna Carta, there's a right to what is called habeas corpus. Habeas corpus in the federal system has been codified to what is known as 2255. Essentially you are probably familiar with 2255. It is a right after direct appeal for you, for instance, to raise issues that may have to do with my ineffectiveness or other collateral issues that could not have been raised on direct appeal.
>
> By collateral, meaning those issues that would probably arise out of my effectiveness to represent you. So that this aspect of waiver of appeal is intended to cover not only your direct appeal rights, but once direct

6

appeal is exhausted bringing a federal habeas corpus or a 2255 to raise other issues.

Simply stated, you've agreed in this plea agreement that ultimately you will not raise any appeal issues concerning the advisory nature of the sentencing guideline calculation. Do you understand that?

(J.A. 199-200). Defense counsel thus specifically explained that Mabry's waiver included the right to assert that counsel was ineffective. In response to the Court's inquiry as to whether there was any doubt in counsel's mind that Mabry understood the plea, he agreed that Mabry fully understood the meaning and effect of the waiver. The Court then found that Mabry was acting voluntarily and fully understood the consequences of the waiver and accepted the plea. On March 9, 2006, Mabry was sentenced to 210 months' imprisonment followed by four years of supervised release.

On May 11, 2006, Mabry, proceeding *pro se*, filed a Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255, along with an affidavit and memorandum of law with attachments in support of his motion. In the motion, he complained of counsel's failure to file an appeal notwithstanding his request that counsel do so. His affidavit contained declarations related only to that issue. His memorandum in support of the motion outlined the four issues

7

he would have raised on appeal. One sentence–"Counsel never presented any reasons to waive his client's right to appeal"–is the only reference to waiver in the filing. (J.A. 134). Mabry did not pursue or explain this statement further (indeed, it appears to refer to his argument that defense counsel never explained that any issues would be frivolous). Instead, his *pro se* memorandum of law continued with a discussion of the four issues that Mabry believes his counsel should have appealed. All challenged the correctness of the calculation of his sentence under the Sentencing Guidelines.[1]

On May 15, 2006, the District Court summarily denied the motion. It concluded that, because the four issues Mabry allegedly asked his counsel to raise were insubstantial and lacked merit, enforcement of the waiver of habeas did not work a miscarriage of justice, and Mabry's petition was therefore barred by the waiver. The Court opined:

> Mabry waived his right to challenge his sentence in a collateral proceeding, including by

---

[1] Namely, (1) a two-point enhancement for possession of a firearm during and in relation to a drug trafficking crime under U.S.S.G. § 2D1.1(b)(1) should not have been applied; (2) a one-point deduction for acceptance of responsibility should have been applied; (3) defendant was improperly designated an armed career criminal under U.S.S.G. § 4B1.1; and (4) the criminal history category used by the District Court substantially over-represented the defendant's criminal history.

8

way of a section 2255 motion and there were no errors committed by this court which rise to the level of a miscarriage of justice which would entitle Mabry to pursue an appeal or collateral relief. *See United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001) ("There may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver.") In the present case, we discern no errors whatsoever in the conviction or sentence imposed.

(J.A. 21). Although the Court referred to the waiver, it did not discuss the colloquy or whether it found the waiver to have been knowing and voluntary. The Court refused to issue a certificate of appealability, stating that any appeal from the order "will be deemed frivolous and not taken in good faith." (J.A. 22).

Mabry, still proceeding *pro se*, then sought a certificate of appealability from our Court. He contended that the District Court's conclusion that "there was no merits [sic] to appellant's constitutional claims, appellant had waived his appeal rights, defense counsel was not ineffective, and there was no substantial showing of a denial of a constitutional right" was in error. Request for a Certificate of Appealability Pursuant to Rule 22(a)(B)(2), Rules of Appellate Procedure ("Capp Motion") 5. In the same motion, Mabry urged the court to determine whether the waiver was made knowingly and

9

voluntarily. He took the District Court to task for enforcing the waiver, alluding in general terms to his contention that the waiver was not knowing and voluntary. Capp Motion 9 ("[T]here is more than good reason, why, this Court should not enforce the waiver provision of the plea agreement, in light of Campusano v. United States, 442 F.3d 770, 2006. Under the circumstance here, there has been a miscarriage of justice, since the appeal waiver was not knowingly and voluntarily made by appellant.") (all grammatical errors in original).

Mabry did not contend, however, that he was misled in any way into pleading guilty or agreeing to the waiver. Nor did his motion state, with any specificity, how the waiver might not be knowing or voluntary; he did not claim to misunderstand the waiver or assert any confusion as to the meaning of the term "miscarriage of justice" used by the Court during the colloquy.

In our Order entered on January 8, 2007, we granted the certificate of appealability as to the following issues:

> (1) whether appellant's waiver of his right to appeal and collaterally challenge his sentence was knowing and voluntary and whether that waiver is enforceable, *see United States v. Khattak*, 273 F.3d 557, 562-63 (3d Cir. 2001); (2) if so, whether that waiver either bars consideration of appellant's 28 U.S.C. § 2255 motion or precludes relief on the merits of his claim that

his counsel rendered ineffective assistance by failing to file a requested appeal, *see, e.g.*, *Campusano v. United States*, 442 F.3d 770, 773-75 (2d Cir. 2006); *Gomez-Diaz v. United States*, 433 F.3d 788, 793-94 (11th Cir. 2005); and (3) whether appellant is entitled to relief on the claims that he asserts his counsel should have raised on direct appeal. The Clerk will request counsel to represent appellant under Internal Operating Procedure 10.3.2.[2]

---

[2] We later modified the third issue to read:

> whether, in the event the Court determines that there should be an evidentiary hearing to consider whether Mr. Mabry received ineffective assistance of counsel because he requested that his trial counsel file a notice of appeal and his trial counsel failed to do so, the Court should decline to address the merits of the claims Mr. Mabry would have

11

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and § 2255(d). *See United States v. Gwinnett*, 483 F.3d 200, 203 (3d Cir. 2007). We review the validity of a waiver *de novo*. *United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001).

## II. Discussion

Criminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver. *See Town of Newton v. Rumery*, 480 U.S. 386, 393 (1987); *Brady v. United States*, 397 U.S. 742, 752-53 (1970); *Adams v. United States*, 317 U.S. 269 (1942). The right to appeal in a criminal case is among those rights that may be waived. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). We have acknowledged the clear precedent validating waivers of basic rights, even in criminal

raised on a direct appeal and should instead remand the case for such an evidentiary hearing for the reasons described in [*Campusano v. United States*, 442 F.3d 770, 775-76 (2d Cir. 2006)].

Order of Aug. 1, 2007 (granting appellant's motion to amend the certificate of appealability).

12

cases.[3]  *Khattak,* 273 F.3d at 561.  Noting the benefits of such

---

[3] In *Khattak*, we wrote:

> As the Supreme Court has stated, "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution."  *United States v. Mezzanatto*, 513 U.S. 196, 201, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995); *see also Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) ("The most basic rights of criminal defendants are ... subject to waiver.").  In every plea agreement, the defendant waives the right to a jury trial, the right to confront and cross-examine witnesses, and the right against self-incrimination. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).  In addition, a defendant can waive his rights against double jeopardy and his Sixth Amendment right to counsel.  *Ricketts v. Adamson*, 483 U.S. 1, 10, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (double jeopardy); *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (right to counsel).

> The United States Constitution

13

waivers to the defendant, government and court system, we have refused to find waivers of appeal rights violative of public policy. *Id*. at 562. Accordingly, we have been willing to enforce such waivers, provided that they are entered into

does not guarantee a right to appeal. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The right to appeal a criminal conviction is created by statute. *See* 18 U.S.C. § 3742. The ability to waive statutory rights, like those provided in 18 U.S.C. § 3742, logically flows from the ability to waive constitutional rights. *Teeter*, 257 F.3d at 22; *see also Shutte v. Thompson*, 82 U.S. (15 Wall.) 151, 21 L.Ed. 123 (1873) ("A party may waive any provision, either of a contract or of a statute, intended for his benefit."). If done knowingly and voluntarily, a statutorily created right to appeal is generally held to be waiveable. *Nguyen*, 235 F.3d at 1182 (noting " 'the sole test of a waiver's validity is whether it was made knowingly and voluntarily' ") (quoting *Anglin*, 215 F.3d at 1068). We agree. 273 F.3d at 561.

14

knowingly and voluntarily and their enforcement does not work a miscarriage of justice. *Id.*[4]

In the instant case, for the first time, Mabry argues, through his new counsel, that his waiver was not knowing and voluntary.[5] More specifically, he contends that the change-of-plea colloquy was inadequate and rendered the waiver not knowing, because the District Court should have, but did not, define "miscarriage of justice" or explain that the exception is particularly narrow. Furthermore, Mabry urges, based on the Supreme Court's opinion in *Roe v. Flores-Ortega*, 528 U.S. 470

---

[4] In *Gwinnett*, we clarified that, even where the defendant has agreed to waive appellate rights, we have subject matter jurisdiction but refrain from exercising it "if we conclude that [a defendant] knowingly and voluntarily waived [his or] her right to appeal unless the result would work a miscarriage of justice." 483 F.3d at 203.

[5] That Mabry did not specifically challenge the waiver in his § 2255 motion before the District Court does not foreclose our review. He cannot be faulted for failing to raise an issue that is neither a basis for habeas relief nor related to his ineffectiveness claim. The fact that he had waived his right to proceed with collateral review would have been a defense to his habeas claim raised by the government. The government, however, did not file an answer to the petition and had no opportunity to do so. The petition (framed as a motion to vacate) was filed on May 11, 2006, and the District Court filed its Opinion and Order on May 15, 2006.

15

(2000), and opinions in the circuit courts applying *Flores-Ortega* in this situation, we must presume prejudice, rising to the level of a miscarriage of justice, and remand for an evidentiary hearing simply because there are allegations that counsel disregarded Mabry's instruction to file an appeal.

In response, the government argues that the waiver was knowing and voluntary and therefore valid. Because the waiver was valid and a defendant may waive his right to accuse counsel of post-sentencing ineffectiveness, the denial of the habeas petition should be affirmed. Accordingly, it says, the enforcement of the waiver does not result in a miscarriage of justice.

## A. The Knowing and Voluntary Nature of the Waiver

The threshold issue before us is whether the waiver of collateral challenge rights in Mabry's plea agreement was knowing and voluntary. Under *Khattak* and *Gwinnett*, where there is a collateral waiver, our task on appeal of a denial of a habeas petition is to determine whether the District Court properly considered the validity of the waiver, specifically examining the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice. Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it. *Khattak,* 273 F.3d at 563. Even on summary

16

dismissal under Rule 4(b) of the Rules Governing Section 2255 Proceedings for the U.S. District Courts, a district court should carefully examine both whether the waiver was knowing and voluntary and whether it results in a miscarriage of justice. Although our precedent has consistently followed this approach, we now reaffirm that a district court has an independent obligation to conduct an evaluation of the validity of a collateral waiver. Compliance with this obligation aids our review and ensures that the defendant's rights are carefully considered.[6]

Here, for the first time, in his counseled appeal, Mabry contends that the colloquy was insufficient because the term "miscarriage of justice" was not explained, rendering his waiver unknowing. Mabry alleges that a lay person could not be expected to understand "miscarriage of justice" as a narrow exception to the broad waiver in his plea agreement and might well understand it to bar a right to appeal only where the district court has not erred. Therefore, he urges:

> The colloquy should have informed the defendant of the gravity of what he was giving up, and of the high hurdle he would face in trying to prove a miscarriage of

---

[6] The issue of the validity of a waiver in a collateral challenge comes to the District Court in the first instance upon the filing of the habeas petition, whereas the issue in an appellate waiver comes for resolution in the first instance to the appeals court. The inquiry is the same, although at different court levels. We review the former, and decide the latter in the first instance.

> justice. Those requirements are all the
> more important given the breadth of the
> waiver here, which, as noted above was
> broader than most. Fed R. Crim P. 11 and
> this Court's jurisprudence required a more
> informative colloquy than Mr. Mabry
> received.

Appellant's Br. 14.

In denying Mabry's petition for habeas, the District Court did not consider the knowing or voluntary nature of the waiver. We believe it should have done so. At minimum, it should have reviewed the terms of the plea agreement and change-of-plea colloquy and addressed their sufficiency.

Because the District Court did not do so, we will engage in an independent review of the record of proceedings to determine whether the waiver of habeas was knowing and voluntary. *See Gwinnett*, 483 F.3d at 203-04 (looking to the plea agreement and colloquy in turn to evaluate knowing and voluntary nature of the waiver). Mabry does not contend that he was actually misled, but instead levels a facial challenge. Accordingly, we will examine the written plea agreement and the change-of-plea colloquy on their faces.[7] The written plea

---

[7] If Mabry were asserting that he was misled in some way, we might remand for a hearing and permit the District Court to consider the issue in the first instance. That is not the case here, and the record is sufficiently developed that we can decide the

18

agreement here clearly provides that the waiver is very broad, admits of no exceptions, and applies to both direct appeal and collateral challenge rights. Counsel explained the waiver to Mabry and Mabry signed it, acknowledging that he understood the terms of the agreement.

The colloquy similarly countermands any suggestion that the waiver was not knowing and voluntary. Having scrutinized the colloquy as we are required to do when reviewing the enforcement of a waiver, we are satisfied that the district court "inform[ed] the defendant of, and determine[d] that the defendant underst[ood] . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence" as Federal Rule of Criminal Procedure 11(b)(1)(N) requires. Before the court accepted the plea agreement, it assured itself that Mabry had not been coerced or misled in any way into entering into the agreement. The court explained the waiver at some length, Mabry responded directly to the court's questions, the prosecution reviewed the waiver with the defendant in open court, and defense counsel was permitted to explain further.

Despite Mabry's arguments that the Court's failure to explain "miscarriage of justice" during the change of plea colloquy renders the waiver involuntary or unknowing, the Court's statement regarding miscarriage of justice is, in fact, a correct summary of the law. That the Court did not explain further or elaborate is not error. We know of no court that has

issue as ably as the District Court.

imposed an obligation on sentencing courts to further define or characterize this term or advise a defendant of its practical applications. The phrase, on its own, connotes something grave and out of the ordinary; our ruling might be different if it seemed to except out mere legal error.

Mabry does not claim that there is any other flaw in the colloquy. Indeed, the colloquy amply demonstrates that the District Court took care to apprise Mabry of the consequences of the waiver and ensure that he understood the terms of the plea agreement and entered into it willingly. Accordingly, we conclude that the waiver was knowing and voluntary.

## B. Counsel's Failure to File an Appeal

Generally, having determined that the waiver was knowing and voluntary, we would consider whether its enforcement would work a miscarriage of justice in this case. Mabry, however, asserts that, even assuming that the waiver is knowing and voluntary, it should not be enforced, because there is a different standard when the defendant complains that he requested that counsel file an appeal and counsel failed to do so. Mabry argues that, under the Supreme Court's decision in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), a presumption of prejudice applies where counsel fails to file a requested appeal even if the defendant has waived his appeal rights, and that, somehow, this requires us to remand for an evidentiary hearing even in the face of a waiver of collateral review. He relies heavily on the decision of the Court of Appeals for the Second Circuit in *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006), and urges that we follow its lead and disregard the

20

existence of the waiver. He contends he is entitled to an evidentiary hearing to determine whether he instructed his trial counsel to file a notice of appeal, and, if so, he must be permitted to pursue a direct appeal.

Our Court has not yet considered this argument. Whether, where there are claims of ineffective assistance, *Flores-Ortega* changes our analysis of the validity of waivers of collateral review remains an open question.

There is admittedly some confusion in this area. This is largely due to the fact that, in a case that did not involve a waiver, the Supreme Court has given the right to appeal special significance as it relates to ineffectiveness claims. In *Flores-Ortega*, the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. The *Flores-Ortega* Court made clear that a presumption of prejudice applies in the context of an ineffectiveness claim because an attorney's deficient performance deprives the defendant of his or her opportunity for an appellate proceeding. *Id.* at 483. Notably, *Flores-Ortega* did not address whether this principle has any force, let alone controls, where the defendant has *waived* his right to appellate and collateral review.

Yet, some courts of appeals have approached the issue here, raised in the context of waiver, as if *Flores-Ortega* did

21

indeed decide it.  In *Campusano*, the key case applying *Flores-Ortega*, the Court of Appeals for the Second Circuit framed the issue as "whether the *Flores-Ortega* presumption of prejudice applies to a defendant who has waived appeal in a plea agreement."  442 F.3d at 773.  Although the procedural posture of the case was the denial of the defendant's § 2255 motion, the court never even discussed the fact that the defendant had waived his habeas rights.  It did not evaluate the validity of the habeas waiver, but instead skipped immediately to the merits of the argument raised in the § 2255 motion, namely whether trial counsel was  ineffective in failing to file a direct appeal.  Surprisingly, we think, a majority of other courts of appeals to consider the issue have engaged in similarly flawed reasoning and have reached the same conclusions.[8]  Instead of scrutinizing the waiver, these courts have focused on the importance of appeal rights as set forth in *Flores-Ortega*–a non-waiver case–and in reliance thereon permitted appeals explicitly barred by waiver.

Heretofore, only one court of appeals–the Court of Appeals for the Seventh Circuit–has disagreed with this line of cases and expressed its skepticism toward this over-expansion of *Flores-Ortega*.  *Nunez v. United States*, 495 F.3d 544 (7th Cir. 2007), *vacated on other grounds*, 2008 WL 2484932 (U.S.

---

[8] *United States v. Tapp*, 491 F.3d 263 (5th Cir. 2007); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1195-99 (9th Cir. 2005); *United States v. Garrett*, 402 F.3d 1262 (10th Cir. 2005); *Gomez-Diaz v. United States*, 433 F.3d 788, 791-94 (11th Cir. 2005).

22

2008). In that case, faced with a defendant's assertions that he did not understand the plea and his lawyer failed to follow his direction to file an appeal, the court turned directly to an examination of the waiver of appeal and collateral challenge. Concluding that the plea was knowing and voluntary and the waiver should be enforced, the court held that the "claim of post-sentencing ineffective assistance falls squarely within the waiver." *Id*. at 546. The court then went on to note that, *in the absence of a waiver*, the filing of a notice of appeal is a purely ministerial task that could only help, not harm the defendant. *Id*. at 547 (citing *Flores-Ortega*, 528 U.S. at 477). By contrast, *where there is a total appellate and collateral waiver*, "counsel's duty to protect his or her client's interest militates against filing an appeal" which could cost the client the benefit of the plea bargain against his or her best interest. *Id*. at 548; *see also Sandoval-Lopez*, 409 F.3d at 1197 ("Sometimes demanding that one's lawyer appeal is like demanding that one's doctor perform surgery, when the surgery is risky and has an extremely low likelihood of improving the patient's condition.").[9] Thus, there is no reason to presume prejudice

---

[9] Even those courts that have applied *Flores-Ortega* in the waiver context have noted that presuming prejudice where there is a waiver makes little sense, because "most successful § 2255 movants in the appeal waiver situation obtain little more than an opportunity to lose at a later date." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007); *accord Campusano*, 442 F.3d at 777 ("Admittedly, applying the *Flores-Ortega* presumption to post-waiver situations will bestow on most defendants nothing more than an opportunity to lose."). So doing, they reach results

23

amounting to a miscarriage of justice in such a situation where the attorney's filing of an appeal would constitute a violation of the plea agreement, relieving the government of its obligations as well.

While we think the Seventh Circuit adopted the correct approach in *Nunez*, the Supreme Court recently granted certiorari in *Nunez*, vacating and remanding the case to the Seventh Circuit Court of Appeals "in light of the position asserted by the Solicitor General in his brief for the United States filed May 12, 2008." *Nunez v. United States*, --- S. Ct. ----, 76 U.S.L.W. 3666, 2008 WL 2484932 (2008). While the Solicitor General's brief takes many positions,[10] his dispositive position and advice to the Court, which would appear to have been heeded, faults the Seventh Circuit for reading the waiver

_____

that are admittedly "contrary to common sense." *See Sandoval-Lopez*, 409 F.3d at 1196.

[10] Including the position that there really is no circuit split on the issue before us due to the failure of the courts of appeals to specifically address the issue of the effectiveness of the waiver. Brief of the United States on Petition for a Writ of Certiorari, *Nunez v. United States*, --- S. Ct. ----, 76 U.S.L.W. 3666 (2008) (No. 07-818), 2008 WL 2050805, at *12  We, however, view the caselaw as creating a split by disregarding the existence of the waiver.

24

too broadly.[11]  Brief of the United States on Petition for a Writ of Certiorari, *Nunez v. United States*, --- S. Ct. ----, 76 U.S.L.W. 3666 (2008) (No. 07-818), 2008 WL 2050805.  This concern is not present here given the broader waiver in this case and the nature of the issues Mabry would raise on appeal.  While containing some discussion of the *Flores-Ortega* issue, the Solicitor General's brief actually urges the Court not to decide this issue, saying it need not do so because the issue "was not resolved below and did not form the basis for the judgment."[12] *Id*. at *12.

In any event, we believe that the other courts of appeals that have considered this issue have applied *Flores-Ortega* to a situation in which it simply does not "fit."  The analysis employed in evaluating an ineffectiveness of counsel claim does not apply when there is an appellate waiver.  While a defendant may be entitled to habeas relief if his attorney ineffectively fails to file a requested appeal because it is presumed to be prejudicial under *Flores-Ortega*, if that same defendant has effectively waived his right to habeas, he cannot even bring such a claim unless the waiver fails to pass muster under an entirely different test: one that examines its knowing and voluntary

---

[11] Properly read, it did not bar the appeal Nunez wished to pursue that complained of the lack of voluntariness of his plea agreement.

[12] The two-sentence order includes a vigorous three-judge dissent chastising the Court for, inter alia, vacating a judgment without deciding whether it was right or wrong.

25

nature and asks whether its enforcement would work a miscarriage of justice.[13] Mabry, and proponents of the reasoning in *Campusano*, would somehow disregard or limit the effect of the waiver based upon the Supreme Court's view of the importance of the right to appeal and the impact of its loss by virtue of counsel's failure to act. But, as we noted above, both we and the Supreme Court have upheld the validity of *waivers* of rights to appeal. Surely, the right to appeal that has been waived stands on a different footing from a preserved right to appeal, both conceptually and in relation to counsel's duty to his client with respect thereto.[14] This distinction has been ignored by those courts of appeals adhering to *Campusano*'s analysis.

Accordingly, we reject the approach taken in the *Campusano* line of cases as not well-reasoned. Our reading of the cases indicates that they disregard the precise issue before them, and us: namely, the validity of the waiver. They seem to

---

[13] We note that while Mabry urges that the waiver is invalid based on the concept of presumed prejudice, the *Campusano* line of cases does not. Instead, they totally ignore the existence of the waiver.

[14] If this issue were limited to an ineffectiveness claim and were evaluated under a *Strickland* analysis, one would wonder how counsel's failure to file a notice of appeal could be considered "outside the wide range of professionally competent assistance," if the right to appeal had been knowingly and voluntarily waived. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984).

26

hold that waivers of collateral attack are automatically invalid because the non-waiver cases say that an attorney acts unreasonably and prejudice is presumed if he fails to file an appeal upon request. They do not resolve the threshold issue of whether the waiver of collateral review rights should preclude a petitioner from asserting a *Flores-Ortega* claim for a reinstated appeal in the first place. Often, they fail to address, let alone explain, that there even is a waiver of collateral attack. *See, e.g.*, *Garrett*, 402 F.3d at 1266 (analyzing the issue as if only an appellate waiver existed and dismissing the total collateral attack waiver in a footnote because "the plain language of the waiver does not address the type of claim he has raised," seemingly imposing a requirement of heightened particularity in waivers of collateral proceedings).

We, therefore, will part ways with the approach taken by the majority of courts of appeals. Although vacated on other grounds, the *Nunez* opinion of the Court of Appeals for the Seventh Circuit presents the proper focus, namely giving effect to the waiver.[15] We will consider the validity of the collateral

---

[15] It is interesting to note that, in the *Nunez* case, the petitioner asked the Court to decide the *Flores-Ortega* issue, Petition for a Writ of Certiorari, *Nunez v. United States*, --- S. Ct. ----, 76 U.S.L.W. 3666 (2008) (No. 07-818), 2007 WL 4466866, but the Court, instead, remanded based on the breadth of the waiver. While it could be argued that the Supreme Court's decision to look at the waiver signaled an affirmation of our review that the waiver should be the focus, it could also reflect a desire to decide the issue on that ground because the Solicitor General

27

waiver as a threshold issue and employ an analysis consistent with other waiver cases. Having already determined that Mabry's waiver was knowing and voluntary, we now turn to an examination of whether enforcing the waiver here would work a miscarriage of justice.

## C. Miscarriage of Justice

In the waiver context, we have adopted a common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced. In *Khattak*, 273 F.3d at 563, we endorsed the methodology of the Court of Appeals for the First Circuit, which suggested "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result" as factors to consider before invalidating a waiver as involving a "miscarriage of justice." *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001). At the same time, we have declined to identify a list of specific circumstances which would give rise to, or constitute, a miscarriage of justice.

As in any other case in which the waiver is alleged to bar collateral attack, here we look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver. In the present case, it is undisputed that

---

urged them to do so. Brief of the United States, *Nunez*, --- S. Ct. ----, 76 U.S.L.W. 3666 (No. 07-818), 2008 WL 2050805 at *10.

the waiver in Mabry's plea agreement was broad and offered no express exceptions.[16] Only the miscarriage of justice exception is available. This is not a case where enforcing a collateral attack waiver would result in barring an appeal expressly preserved in the plea agreement. We have held that enforcing such a waiver would result in a miscarriage of justice. *United States v. Shedrick*, 493 F.3d 292, 303 (3d Cir. 2007) (invalidating a collateral waiver because defense counsel's constitutionally deficient conduct in failing to file an appeal as instructed deprived the defendant of "the opportunity properly

---

[16] A few comments are in order about the waiver in this case. First, although the sweep of this waiver seems particularly one-sided and unusually broad, we were reminded at oral argument by the Assistant United States Attorney that the government agreed to surrender a mandatory consecutive term of imprisonment of five years as part of the consideration for the plea agreement; something the government does not normally do. Second, if one were to question (although Mabry does not) whether the waiver is indeed broad enough to cover this type of alleged attorney ineffectiveness, i.e., post-waiver failure to file an appeal, it should be readily apparent that this claim would not succeed in the unique fact pattern presented here where the issues that Mabry wished to pursue on appeal were clearly waived, and there was no allegation by him as to lack of voluntariness. Counsel's failure to file an appeal in such a situation could not be held to be sub-standard, nor did it result in any prejudice to Mabry. This is yet another example of why presuming prejudice is not appropriate where a waiver is present.

to raise the issue he had previously expressed a desire for this Court to review and which he had explicitly preserved in his plea agreement and colloquy"). Nor is this a case raising allegations that counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver. *See, e.g.*, *United States v. Wilson*, 429 F.3d 455 (3d Cir. 2005) (stating that enforcing a waiver in connection with a coerced plea would work a miscarriage of justice, but then determining, based on the plea colloquy, that the plea was knowing and voluntary).

Under a proper analysis of the validity of the waiver here, we must conclude that enforcing the waiver would not result in a miscarriage of justice. Upon a careful review of Mabry's filings, we see that Mabry has not identified any nonfrivolous ground, not covered by the waiver, for a direct appeal or collateral attack in his petition, Capp Motion, his counseled brief, or any other filing. Mabry does not contend that he was misled or that enforcing the waiver is somehow unjust.[17] The issues Mabry seeks to raise on appeal are insubstantial and clearly encompassed by the broad waiver. They do not implicate fundamental rights or constitutional principles. The District Court's conclusion–that the purportedly appealable issues are not substantial and fall clearly within the terms of the

---

[17] Like the *Nunez* court, we acknowledge that, in certain unique factual situations not presented here, defendant's counsel's failure to file an appeal even in the face of a waiver would result in a miscarriage of justice. *Nunez*, 495 F.3d at 547-48.

30

waiver–is correct.

Enforcing the waiver is in line with justice, not a miscarriage of it. The waiver meets the two-prong test we use to evaluate waivers in that it: 1) was knowing and voluntary, as the colloquy was sufficient and Mabry has not indicated that he did not understand it, and 2) does not work a miscarriage of justice.[18]

In closing, we note that, from an analytic standpoint, the concept of a "presumption of prejudice" flowing from ineffectiveness that fits very comfortably in the *Flores-Ortega* setting where there is no waiver really does not suit the situation in which a waiver is present. Without a waiver, the recognition of a defendant's right to an appeal is paramount and counsel's ineffectiveness clear, for the defendant was entitled to an appeal. With a waiver, that entitlement disappears, and the ineffectiveness of counsel in not pursuing a waived appeal is less than clear. The analysis of the waiver along the lines developed in our jurisprudence, which permits the court to refuse to enforce it if it would work a miscarriage of justice, allows consideration of fundamental fairness in a given situation.

For the foregoing reasons, we will enforce the collateral waiver provision of the plea agreement and will affirm the District Court's order.

---

[18] We do not reach the last issue set forth in the certificate, as our focus is on the waiver of collateral review and we uphold it.