**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2261
_____

UNITED STATES OF AMERICA

v.

DAMON LEROY KAYES,
                                        Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 1-11-cr-00065-001)
District Judge: Honorable Sean J. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
May 15, 2014
_____

Before: SMITH, VANASKIE, and SHWARTZ, Circuit Judges.

(Filed: May 16, 2014)
_____

OPINION
_____

SHWARTZ, Circuit Judge.

Damon Kayes appeals the sentence he received for using an explosive device that

caused damage to a bar that refused him service. Because Kayes waived his appellate

rights, we will dismiss his appeal.

# I

As we write principally for the benefit of the parties, we recite only the essential facts and procedural history. On September 9, 2011, Kayes was refused service at the Players Downtown bar in Bradford, Pennsylvania, because the bartender believed he was already intoxicated. Kayes became belligerent and was removed from the bar. He returned approximately an hour later and threw a Molotov cocktail at the bar's front door. Kayes was later charged with maliciously damaging and attempting to damage a building in interstate commerce by means of fire and an explosive, in violation of 18 U.S.C. § 844(i).

Kayes signed a plea agreement in which the parties stipulated to an upward variance from the advisory Guidelines range, resulting in an agreed-upon final Sentencing Guidelines range of 120 to 180 months' imprisonment.[1] The agreement also included a waiver of Kayes's right to appeal from his conviction or sentence unless the government filed an appeal, the sentence exceeded the statutory maximum, or the sentence "unreasonably exceed[ed] the guideline range determined by the Court under the Sentencing Guidelines . . . ." App. 105.

During Kayes's guilty plea hearing, the government explained the stipulated variance and resulting Guidelines range, and the government and the District Court each explained Kayes's appellate waiver, which Kayes confirmed he understood. At Kayes's

---

[1] Kayes agreed to this range in exchange for the government declining to charge Kayes with the use of a destructive device under 18 U.S.C. § 924(c), which carries a 30-year mandatory minimum.

sentencing, the District Court acknowledged that an application of the Guidelines resulted in a sentence of 60 months, reviewed the plea agreement's stipulated variance from the Guidelines range, and noted the variance reflected the parties' desire to avoid the 30-year mandatory minimum Kayes faced if charged under § 924(c). The District Court concluded that Kayes "is unfortunately a violent recidivist" and, emphasizing the goals of protection of the public and deterrence, sentenced Kayes to 150 months' imprisonment, the middle of the stipulated range. App. 87. Kayes appealed, arguing that his sentence was unreasonable. The government moved to enforce the appellate waiver and summarily dismiss the appeal.[2]

## II

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.[3] "The validity and scope of an appellate waiver involves a question of law and is, therefore, reviewed de novo." United States v. Wilson, 707 F.3d 412, 414 (3d Cir. 2013) (citing United States v. Khattak, 273 F.3d 557, 560 (3d Cir. 2001)).

---

[2] The government also moved to dismiss the appeal as untimely, but it is no longer challenging the timeliness of the appeal.

[3] We "retain[] subject matter jurisdiction over the appeal by a defendant who ha[s] signed an appellate waiver." United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir. 2007). We will not exercise that jurisdiction to review the merits of Kayes's appeal if we conclude that his appellate waiver should be enforced. Id.

This Court "will enforce an appellate waiver and decline to review the merits of an appeal where we conclude (1) that the issues the defendant pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." Wilson, 707 F.3d at 414 (internal quotation marks and alteration omitted). Waivers of the right to appeal a sentence are valid as long as they satisfy these conditions. United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008) (citing Khattak, 273 F.3d at 563).

With respect to the first condition, this Court has followed the "well-established principle that plea agreements, although arising in the criminal context, are analyzed under contract law standards. . . . [Thus,] the language of an appellate waiver, like the language of a contract, matters greatly to our analysis." United States v. Corso, 549 F.3d 921, 927 (3d Cir. 2008) (internal quotations, citations, and alteration omitted). "Broad" and "clear" appellate waivers can be interpreted straightforwardly. Id.

With respect to the second condition, "[t]he constitutional requirement that a guilty plea be 'knowing' and 'voluntary' is embodied in Federal Rule of Criminal Procedure 11." United States v. Schweitzer, 454 F.3d 197, 202 (3d Cir. 2006). To hold that an appellate waiver was "knowing" and "voluntary," this Court must be "satisfied that the district court 'inform[ed] the defendant of, and determine[d] that the defendant underst[ood] . . . the terms of any plea-agreement provision waiving the right to appeal or

4

to collaterally attack the sentence' . . . ." Mabry, 536 F.3d at 239 (quoting Fed. R. Crim. P. 11(b)(1)(N)) (alterations in original).

With respect to the third condition, this Court has endorsed the following list of factors to be applied in determining whether enforcement of an appellate waiver would work a "miscarriage of justice": "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Khattak, 273 F.3d at 563 (internal quotation marks and alteration omitted).

Here, Kayes's appellate waiver satisfies all three conditions. First, the language of the waiver covers the issue he presents, namely the reasonableness of the agreed-upon variance and resulting sentence. The only exception to the waiver that might apply here is the exception permitting an appeal from a sentence that "unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines . . . ." App. 105. The District Court determined that the Guidelines range prior to any departures or variances was the 60-month mandatory minimum. The sentence it ultimately imposed, however, did not "unreasonably" exceed that range given the nature of Kayes's conduct and the risk of harm it posed to others, his desire to avoid a possible 30-year mandatory minimum prison term, and the fact he agreed to such a sentence. Thus, we are satisfied that the District Court's sentence was not "unreasonably" in excess of the Guidelines and

this exception to Kayes's appellate waiver does not give him an avenue to pursue an appeal.

Second, Kayes's appellate waiver was knowing and voluntary. See Mabry, 536 F.3d at 239. At Kayes's plea hearing, the District Court thoroughly explained and confirmed Kayes understood the provisions of his plea agreement, including the appellate waiver. Kayes told the District Court he understood the waiver and does not now contend that he did not understand it.

Third, a consideration of the Khattak factors demonstrates that the enforcement of Kayes's waiver would not work a miscarriage of justice. The 150-month sentence was below the statutory maximum of 20 years, 21 U.S.C. § 844(i), and in the middle of the range to which Kayes agreed. See Khattak, 273 F.3d at 563. Moreover, Kayes's agreement to such a sentence enabled him to avoid a much longer prison term. Thus, this situation does "not implicate fundamental rights or constitutional principles," and therefore no miscarriage of justice will result from enforcing the waiver. Mabry, 536 F.3d at 243.

IV

For the foregoing reasons, we will enforce Kayes's valid appellate waiver and dismiss the appeal.