**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2502
_____

UNITED STATES OF AMERICA

v.

DEMARIO ANTUAN WHITE,
Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-09-cr-00262-002)
District Judge: Honorable A. Richard Caputo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 21, 2019
_____

Before: AMBRO, RESTREPO, and FISHER, *Circuit Judges*.

(Filed: October 31, 2019)
_____

OPINION[*]
_____

_____

   [*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Appellant Demario Antuan White challenges the validity of the collateral challenge waiver in his guilty plea agreement. He argues that he did not "knowingly" agree to this waiver provision and that it "works a miscarriage of justice" against him. We will affirm the District Court's decision to uphold the collateral challenge waiver and deny White's motion for post-conviction relief.

**I**

**A**

A grand jury charged White on August 25, 2009 with use of a firearm during a crime of violence (Count III) and four other counts. On January 6, 2011, White pleaded guilty to Count III, using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), with attempted kidnapping as the predicate crime of violence. The government agreed to a ten-year statutory minimum sentence and to dismiss all remaining counts.

Under the heading, "Appeal Waiver," the written plea agreement contained a waiver of White's rights to both directly appeal and collaterally challenge his conviction. App. 33. The collateral challenge waiver, the provision relevant to this appeal, states:

> The defendant also waives the defendant's right to challenge any conviction or sentence . . . or the manner in which the sentence was determined *in any collateral proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255*.

App. 33 (emphasis added).

At White's plea hearing, as the government outlined the key terms of the agreement at the Court's request, the government noted that the agreement contained an

2

"appeal waiver" in which the "defendant gives up his right to appeal his sentence and *a right to at any later time challenge the sentence*." App. 39 (emphasis added). The Court, referring to White's "right to appeal," asked him: "And part of the reason I presume you're giving that up is because you reached this arrangement or understanding with the government to have a term of ten years?" App. 39. White replied: "Yes, sir." App. 39. The Court confirmed that White and his counsel were content with the bargain he received in exchange for the waiver—and only then did the Court conclude that it was "satisfied that the appeal waiver is both knowing and voluntary." App. 39.

**B**

Notwithstanding his collateral challenge waiver, on May 18, 2016, White filed a motion to correct his sentence under 28 U.S.C. § 2255, urging the District Court to vacate his judgment and sentence because attempted kidnapping no longer qualified as a predicate crime of violence under § 924(c), in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). The District Court found White's collateral challenge waiver enforceable. *United States v. White*, No. 3:09-CR-262-2, 2018 WL 2734857 (M.D. Pa. June 7, 2018). White timely appeals that decision.[1]

---

[1] White's codefendant, Ernest Parker, has filed an almost-identical challenge in *United States v. Parker*, No. 18-2254, which we will address separately.

3

**II**[2]

Appellate and collateral challenge waivers are valid as long as they are knowing, voluntary, and do not work a miscarriage of justice. *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008), *abrogated on other grounds by Garza v. Idaho*, 139 S. Ct. 738 (2019); *Khattak*, 273 F.3d at 563. "Waivers of the legal consequences of unknown future events are commonplace"—and in fact they "assist defendants in making favorable plea bargains." *Khattak*, 273 F.3d at 561–62; *see also id.* at 561 ("As the Supreme Court has stated, 'A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution.'" (quoting *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)). Courts should therefore "strictly construe[]" such waivers. *Id.* at 562. White argues that his waiver was not knowing and that it works a miscarriage of justice.

**A**

White argues that he did not knowingly agree to the collateral challenge waiver because (1) the District Court failed to specifically inform him of the waiver and confirm his understanding of it,[3] (2) the written plea agreement "includes legal terminology and

---

[2] The District Court had jurisdiction over this matter pursuant to 18 U.S.C. § 3231 and § 2255(a). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and § 2255(d). We review the District Court's decision to enforce a waiver of the right to collaterally challenge a judgment and sentence *de novo*. *See United States v. Khattak*, 273 F.3d 557, 560 (3d Cir. 2001). We do not address the merits of White's appeal.

[3] White raises this argument under Federal Rule of Criminal Procedure 11. Because White did not raise this Rule 11 objection before the District Court, he "has the burden to satisfy the plain-error rule" as to this particular argument. *United States v. Corso*, 549 F.3d 921, 928 (3d Cir. 2008) (internal quotations omitted). Under this

4

citations that would be unintelligible to a layperson," and (3) White could not have anticipated subsequent changes in the law. Appellant's Br. 6–7.

The government asserts that White waived his argument that he did not "knowingly" enter into the collateral challenge waiver because he did not raise this issue before the District Court. We disagree. The District Court "has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Mabry*, 536 F.3d at 237–38 ("Compliance with this obligation aids our review and ensures that the defendant's rights are carefully considered."). "At minimum, [the District Court] should have reviewed the terms of the plea agreement and change-of-plea colloquy and addressed their sufficiency." *Id.* at 238. As was the case in *Mabry*, White does not argue that he was "actually misled" but facially challenges the terms of the agreement and substance of the plea hearing colloquy. *See id.* Again similar to *Mabry*, the District Court's opinion did not analyze whether White knowingly and voluntarily entered into the waiver. Thus we will. *See id.* ("Because the District Court did not do so,

_____

standard, he must show "(1) that there was an error, i.e., a deviation from a legal rule, (2) that the error was 'plain,' i.e., clear or obvious, and (3) that the error affected his substantial rights." *Id.* at 928. As this Court stated in *Corso*, relief on plain-error review is discretionary, "and even if all three conditions are met we will exercise our discretion to correct the unpreserved error only if" we are persuaded that a miscarriage of justice would otherwise result. *Id.* at 929. Thus we incorporate our "miscarriage of justice" analysis below, *see* Section II.B, and find that White's Rule 11 argument does not warrant relief under the plain error standard. Section II.B demonstrates that the Rule 11 error alleged by White does not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings," as required to demonstrate a "miscarriage of justice" on plain error review. *United States v. Goodson*, 544 F.3d 529, 541 n.11 (3d Cir. 2008) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (internal quotations omitted).

5

we will engage in an independent review of the record of proceedings to determine whether the waiver of habeas was knowing and voluntary.").

It is undisputed that White's counsel explained the "Appellate Waiver" provision to him and that White acknowledged as much when he signed the agreement. App. 36 (The agreement states: "I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it."). This acknowledgement counteracts White's unsubstantiated argument that the terms of the agreement would have been "unintelligible" to him. *See* Appellant's Br. 7.

The District Court's plea colloquy, described above, though not a model of technical perfection, addressed the "appeal waiver" and called upon the government to review key terms, including White's relinquishment of his "right to at any later time challenge the sentence." App. 39. The colloquy sufficiently counteracts White's claim that the collateral challenge waiver was not knowing and voluntary.[4]

Additionally, we agree with the District Court's finding that subsequent changes in the law do not make a plea agreement "involuntary or unknowing." App. 5–6 (internal quotations omitted); *see also United States v. Lockett*, 406 F.3d 207, 213 (3d Cir. 2005) ("The waiver of an appeal will not be invalidated merely because unanticipated events

---

[4] We will note nevertheless that the District Court should not have delegated its duties to the government to "address the defendant personally" and "determine that the defendant understands" his appeal and collateral challenge waivers, Fed. R. Crim. P. 11(b)(1)(N), and the District Court should have more clearly addressed the collateral challenge waiver as distinct from the appeal waiver. (In a perfect world, these waivers would have been listed separately in the written agreement as well.) Though there were plausible Rule 11 issues stemming from the plea colloquy, we are satisfied that White entered into the waiver knowingly and voluntarily.

occur in the future. The prospective nature of waivers has 'never been thought to place [waivers] off limits or to render a defendant's act "unknowing."'" (quoting *Khattak*, 273 F.3d at 561) (alteration in original)). Thus, we find the "knowing and voluntary" requirement for a valid waiver satisfied.

## B

White next argues that enforcement of the waiver would constitute a "miscarriage of justice." Appellant's Br. 8–9. He claims that, pursuant to the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), attempted kidnapping no longer constitutes a predicate "violent felony" to support his conviction under § 924(c). Appellant's Br. 8.

*Khattak* set forth the following factors to consider in determining whether enforcing a waiver results in a "miscarriage of justice":

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

273 F.3d at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)) (alteration in original); *see also Mabry*, 536 F.3d at 243 (noting this analysis requires courts to "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver").

The "clarity" and "gravity" of the alleged error and its effect on the defendant are not ascertainable because White entered into a plea agreement. Under the terms of the agreement, the government dismissed the remaining four counts against him in addition

7

to other concessions. Given the benefits White received, it is difficult to imagine what punishment he would have faced absent the agreement.

The character of the error is that the predicate "violent felony" to White's § 924(c) conviction, the only count to which he pleaded guilty, is allegedly no longer a viable predicate offense. While *Johnson* raises serious concerns and has upended sentences in many other cases, so many other variables were at play in the formation of the plea agreement here, and White undoubtedly garnered a benefit from his bargain. Plea agreements, by their nature

> always entail risks for the parties—risks relating to what evidence would or would not have been admitted at trial, risks relating to how the jury would have assessed the evidence and *risks relating to future developments in the law*. The salient point is that a plea agreement allocates risk between the two parties as they see fit.

*Lockett*, 406 F.3d at 213 (emphasis added) (quoting *United States v. Bradley*, 400 F.3d 459, 464 (6th Cir. 2005)).

In other words, a valid plea agreement "'requires knowledge of existing rights, not clairvoyance.'" *Id.* (quoting *Bradley*, 400 F.3d at 463).

We agree with the District Court that the effect on the government of correcting the alleged error "would be great." App. 6. "Not only would the government have to re-litigate a nearly ten-year old crime, but the government would also find itself litigating more of these actions as prisoners learn of yet another avenue to challenge the propriety of their sentences." App. 6–7. Lastly, we believe that White acquiesced fully and completely in the result, as he entered into a plea agreement by which he and the government both acquired risks and benefits that they presumably deemed worthwhile.

8

*See Khattak*, 273 F.3d at 561 ("Allowing defendants to retract waivers would prolong litigation, affording defendants the benefits of their agreements while shielding them from their self-imposed burdens.").  Thus, we will enforce White's collateral challenge waiver, and we do not reach the merits of this appeal.

### III

For the foregoing reasons, we will affirm the judgment of the District Court.