U.S. COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2863

_____

UNITED STATES OF AMERICA

v.

LEROY ROEBUCK, JR.,
                    Appellant

_____

Appeal from the District Court, D.V.I.
Judge Wilma A. Lewis, No. 1:23-cr-00009-001

_____

Submitted under Third Circuit L.A.R. 34.1(a)
May 15, 2026

Before: KRAUSE, CHUNG, and SMITH, *Circuit Judges*

(Filed: May 27, 2026)

_____

OPINION[1]

_____

---

[1] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Circuit Judge.*

Effects of hindsight often breed dissatisfaction. We can be infallible ex post, but the reality is that we function ex ante—and then endure the consequences. Monday morning has a cruel way of clarifying Sunday night's mistakes. Mulligans are seldom offered. And so it goes.

Appellant Leroy Roebuck, Jr. waived his right to appeal pursuant to a plea agreement he executed with the Government. He nevertheless seeks to challenge the propriety of the criminal sentence he ultimately received. But because the appellate waiver is valid, we will enforce it and affirm the judgment of the District Court.

I

On Leap Day, 2024, Roebuck entered into an agreement to plead guilty to one count of conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C). As the agreement recited, this crime carried the possibility of "up to 20 years [(240 months)] imprisonment." A12. But, pursuant to the bargain struck, the Government promised to recommend that Roebuck serve no more than 71 months. In exchange for this concession, Roebuck:

> expressly waive[d]: (1) the right to appeal his conviction, any sentence within the maximum provided in the statute(s) of conviction, and the manner in which that sentence was determined, on any ground whatsoever; and (2) the right to file any collateral attack, or any other writ

2

> or motion, including but not limited to a motion under 28 U.S.C. § 2255, which challenges his conviction or the sentence imposed by the court.

A19. He did so aware that, despite the Government's recommendation, the District Court could still "impose any sentence, up to the statutory maximum." A16.

At the plea colloquy, the presiding magistrate[2] confirmed that Roebuck had entered the agreement knowingly and voluntarily. The judge also advised Roebuck of the "maximum penalties" he faced, SA16, and established that he understood "that the sentence ultimately imposed may be different from any estimate [that his] attorney may have given to [him]," SA18. And the judge ensured that Roebuck knew he had "waived [his] . . . right to appeal or collaterally attack all or part of any sentence imposed." SA19.

True to its word, at sentencing, the Government recommended 71 months imprisonment. The District Court, however, imposed a heftier penalty of 97 months, at the low end of Roebuck's advisory guidelines range. Roebuck filed a timely (though, as we shall see, verboten) appeal.

---

[2] Pursuant to Local Rule 59.1 of the District Court of the Virgin Islands, "Magistrate Judges are . . . designated to hear and determine in all criminal cases any pretrial matter permitted by 28 U.S.C. § 536 and Federal Rule of Criminal Procedure 59(a)."

3

II

The District Court had jurisdiction over this case pursuant to 48 U.S.C. § 1612 and 18 U.S.C. § 3231. Our jurisdiction is secured through 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). "We review the validity and scope of an appellate waiver de novo." *United States v. Grimes*, 739 F.3d 125, 129 (3d Cir. 2014).

III

In negotiation, risk parallels reward. Big bounties require big wagers. And rarely is satisfaction guaranteed. When a defendant enters an open plea agreement, he assumes a certain degree of risk and, in exchange, typically averts the worst-case scenario. But he remains bound to the deal he struck, even if the resulting sentence turns out less favorably than he had hoped. This is essential to the entire enterprise of plea bargaining; if defendants could simply renege on concessions when displeased with an outcome, prosecutors would refuse to negotiate with them altogether. Thus, to preserve what is generally regarded as a mutually beneficial practice, we enforce appellate waivers contained in plea agreements so long as "we conclude (1) that the issues the defendant pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." *Grimes*, 739 F.3d at 128–29 (quoting *United States v. Wilson*, 707 F.3d 412, 414 (3d Cir. 2013) (citation modified)). The appellate waiver to which Roebuck acceded

4

checks the first two boxes, and its enforcement poses no threat to justice. Accordingly, we will enforce it.

A

On appeal, Roebuck challenges the length of the 97-month sentence the District Court imposed, disputing the weight the Court gave certain mitigating factors. That issue plainly "fall[s] within the scope of his appellate waiver." *Id.* at 129. As part of the plea agreement, Roebuck waived "the right to appeal his conviction, any sentence within the maximum provided in the statute(s) of conviction, and the manner in which that sentence was determined, on any ground whatsoever." A19. His 97-month sentence is well below the statutory maximum of 240 months. The appellate waiver, therefore, applies. *See United States v. Goodson*, 544 F.3d 529, 537 (3d Cir. 2008) (concluding that a similar appellate waiver provision applied where the defendant's 27-month sentence did not exceed the statutory limit of 240 months).

B

Having concluded that this appeal falls within the scope of the waiver, we now ask whether Roebuck executed the waiver knowingly and voluntarily. We have no doubt that he did.

To determine whether a defendant knowingly and voluntarily agreed to waive the right to appeal, we review both the language of the plea agreement and the plea

colloquy. *See United States v. Gwinnett*, 483 F.3d 200, 203–204 (3d Cir. 2007). Our assessment of the agreement focuses, *inter alia*, on the breadth of the waiver, whether counsel explained the waiver to the defendant, and whether the defendant acknowledged that he understood the terms. *See United States v. Mabry*, 536 F.3d 231, 238 (3d Cir. 2008), *abrogated on other grounds by Garza v. Idaho*, 586 U.S. 232, 236 n.3 (2019). We scrutinize the colloquy to confirm that the District Court "informed the defendant of, and determined that the defendant understood the terms of any plea-agreement provision waiving the right to appeal . . . as Federal Rule of Criminal Procedure 11(b)(1)(N) requires." *Id.* at 239 (citation modified).

In Roebuck's case, all the evidence indicates a knowing and voluntary waiver of the right to appeal. The waiver provision is broad and clear. *See Gwinnett*, 483 F.3d at 203–204. And Roebuck confirmed both in writing and orally before the magistrate that his lawyer had explained the provision and that he understood it. His lawyer attested to the same. Moreover, when asked directly during the colloquy whether he understood that the plea agreement prohibited him from appealing "any sentence within the maximum provided in the statutes of conviction," Roebuck answered, "Yes." SA20. Nothing in this record suggests even a hint of confusion as to the bargain or its consequences. The waiver was knowing and voluntary.

6

C

At this juncture, only an appeal to justice in the abstract can rescue Roebuck's case. Wary of "a blanket rule prohibiting all review of certain otherwise valid waivers," we have previously recognized the possibility of "unusual circumstance[s] where an error amounting to a miscarriage of justice may invalidate [such a] waiver." *United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001). Affording ourselves the flexibility that a concept like justice demands, we do not require a defendant who seeks to invalidate a waiver on these grounds to shoehorn himself into a prefabricated fact pattern but instead consider the following factors:

> The clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Id.* at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001) (citation modified)). Where these factors expose an injustice, we may refuse to enforce the appellate waiver. But they do not counsel doing so here.

In short, enforcing an otherwise valid waiver to prevent a defendant from challenging the weight a District Court afforded mitigating factors in relation to a sentence at the bottom of the Guidelines' range is not an affront to justice. *See United States v. Banks*, 743 F.3d 56, 59 (3d Cir. 2014) (rejecting the argument that enforcing

7

a waiver provision to prevent a challenge to a sentence well below the statutory maximum might constitute a miscarriage of justice). Actually, in Roebuck's case, "[e]nforcing the waiver is in line with justice, not a miscarriage of it." *Mabry*, 536 F.3d at 244.

IV

Roebuck knowingly and voluntarily waived his right to appeal, and enforcing the waiver will not work a miscarriage of justice. We will, therefore, enforce the waiver and affirm the judgment of the District Court.